## STATE v. GILES DRIVER.

*Indictment--Assault  and  Battery--Unconstitutional Judgment.*

1. A sentence of imprisonment for five years in the County jail and a recognizance of $500 to keep the peace for five years after the expiration thereof upon a defendant convicted of assault and battery, is unconstitutional.

2. The judgment in such case is reviewable and the decision of this Court will be certified to the Court below, to the end that a regular and proper judgment may be entered.

(*State* v. *Miller*, 75 N. C. 73 ; *State* v. *Cook*, Phil. 535 ; *State* v. *Manuel*, 4 Dev. & Bat. 20, cited and approved.)

PETITION for a Writ of Certiorari, filed by the defendant and granted at June Term, 1877, of THE SUPREME COURT.

The record states substantially ;—On the 22d of May, 1877, the defendant caused a notice to be served by the Sheriff upon the Solicitor of the District of his intention to apply for a writ of *certiorari*, and on the following day a copy of his petition was likewise served.  He stated in his petition that he had been indicted for an assault and battery upon his wife, committed in the month of June, 1876 ; that he pleaded guilty to the indictment and submitted to the judgment of the Court; that the evidence adduced was substantially that while under the influence of passion and the effects of ardent spirits, he whipped his wife with a switch in a field near his house, with such severity as to leave marks of the strokes of the switch visible on her arms and shoulders for two or three weeks, and at the conclusion of the whipping he gave her one kick; that his wife testified that at previous times while under the influence of liquor he had chastised her, but with much less severity ; that he is advised that the judgment (which is set out in the petition) imposed on him is erroneous and illegal, and that he has the right to have the same reviewed ; that he was un-

able to secure legal services until recently, by reason of his poverty, or to take the necessary steps to appeal, and ought not to be held guilty of laches in the premises; and he therefore asked that a writ issue to the Clerk of the Superior Court of Yadkin County, commanding him to transmit to this Court a full and complete transcript of the record in the case, and that said judgment be reviewed and reversed. The petition was verified by the oath of defendant, and the prayer thereof was granted by this Court at the last term by an order, which is as follows; " There are two questions involved, (1) is the sentence, five years imprisonment in the County jail, and then a recognizance with sureties in $500 to keep the peace for five years longer, in conflict with that provision of the Constitution which prohibits excessive fines and cruel or unusual punishments; (2) if it is, has this Court the power to review it.   We forbear the expression of any opinion until the questions can be argued.   The *certiorari* will issue according to the prayer of the petitioner." In obedience to said order the Clerk of said Court on the 31st of December, 1877, sent a transcript of the record,— copy of the bill of indictment charging the assault, the verdict of guilty, and the judgment of the Court, that defendant be imprisoned for five years in the County jail and at the end of that term to enter into bond with sufficient security in the sum of $500 to keep the peace for five years towards his wife and all other good citizens, and then to be discharged according to law.   And at this term the case was argued by the *Attorney General* for the State, and *Mr. J. A. Gilmer*, for the defendant.

READE, J.  " Excessive bail should not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."  Const. Art. I § 14.  This is a provision in our State Constitution and in the Constitution of the United States, and is a copy of the English Bill of Rights.

The defendant was indicted for an assault and battery upon his wife, and was convicted and sentenced to imprisonment in the County jail for the space of five years, and at the expiration thereof, to give security to keep the peace for five years in the sum of $500 with sureties. Being unable from poverty to appeal, he files his petition in this Court for a *certiorari* to bring up the case for review, upon the ground that the sentence was violative of the Constitution, in that, it imposes upon him "cruel and unusual punishment."

We have no information of the particulars of the charge against him except what he states in his petition. He states that while in a passion and under the influence of drink, he whipped his wife with a switch with such severity as to leave the marks for two or three weeks, and that he kicked her once, and that he had whipped her before, but not with the same severity, and that when brought to trial he pleaded guilty and submitted.

Taking that statement to be true, it would seem that he is a bad man, and not likely to have much of the public sympathy. And it is not unnatural that His Honor should have been moved to some severity against him. But still there are two questions for us to determine,—first, is the sentence of the Court unconstitutional ; and, second, is it a matter which we can review ?

In *State* v. *Miller.* 75 N. C. 73, which was an assault with intent to kill, the defendant was sentenced to five years imprisonment in the County jail. A new trial was given on other grounds, and it was not necessary that we should decide whether the punishment was lawful, but we clearly intimated our opinion that it was not. We stated that the oldest member of this Court did not remember an instance where any person had been imprisoned five years in a County jail for *any* crime however aggravated. And no instance was cited at the Bar, in the argument of that case,

or this, although inquiry was made of the Bar, of such a term of imprisonment. We have examined our Rev. Code which was prior to our penitentiary system and to our Constitution of 1868, when imprisonment was altogether in the County jails, and unless we have inadvertently overlooked some crime, there was none, the punishment whereof was for so long a time. In many cases the punishment was specified; in others, it was not to be less than so and so; in others, not exceeding so and so; and in others, at the discretion of the Court; these last being generally *small offences* where it was *not usual to punish much;* and to cover all cases of felony where the punishment was not specific, there was the following provision: "Every person who shall hereafter be convicted of any felony for which no specific punishment shall be prescribed by statute, and which is now allowed the benefit of clergy, shall be imprisoned at the discretion of the Court not exceeding two years; or if the offence be infamous, the Court may also sentence the convict to receive one or more public whippings, to stand in the pillory, or pay a fine, regard being had to the circumstances of each case." Rev. Code, ch 34, § 27.

And in regard to misdemeanors, where the punishment was not specific, they were to be punished as at common law. Rev. Code, ch. 34, § 120.

So it appears that in clergyable felonies however aggravated, imprisonment was limited to two years in all cases where the punishment was not specific; and it has escaped our attention if in any case imprisonment was prescribed exceeding two years, except in the cases of embezzlement by the State Treasurer, and in counterfeiting and forgery, where it might be three years. It would seem to be clear that what is greater than has ever been prescribed or known or inflicted, must be "excessive, cruel and unusual."

Now, it is true, our terms of imprisonment are much longer, but they are in the Penitentiary, where a man may live and be made useful; but a County jail is a

close prison, where life is soon in jeopardy, and where the prisoner it not only useless, but a heavy public expense·

Taking it to be, that the sentence is unlawful, is it subject to review, or is it *entirely* discretionary with the Judge below? An unlawful, unconstitutional judgment of an inferior Court affecting the liberty of the citizen, not the subject of review by the Court of appeals, where every order or judgment involving a matter of law or legal inference is reviewable! There cannot be a doubt about it. There is no such anomaly.

It is true that we find very little authority about it, which is probably owing to the fact that the administration of our criminal law is so uniformly humane that there is seldom occasion for complaint: Mr. Justice STORY, in commenting on this provision of the Constitution of the United States, says: "The provision would seem to be wholly unnecessary in a free government, since it is scarcely possible that any department of such a government should authorize or justify such atrocious conduct. It was however adopted as an admonition to all Departments of the National Government to warn them against such violent proceedings as had taken place in England in the arbitrary reigns of the Stuarts. In those times a demand of excessive bail was often made against persons who were odious to the Court and its favorites, and on failure to procure it, they were committed to prison. Enormous fines and amercements were also sometimes imposed, and cruel and vindictive punishments inflicted. Upon this subject Mr. Justice BLACKSTONE has wisely remarked, that sanguinary laws are a bad symptom of the distemper of any State, or at least of its weak Constitution." 3 Story, Com. on Const. § 1896.

It is true that there never has been anything in our government, State or National, to provoke such provision, yet it was thought to be so appropriate, that it was adopted into our Bill of Rights, and has ever been preserved in our

fundamental law, as a " warning." Nor was it intended to warn against merely erratic modes of punishment or torture, but applied expressly to " bail," " fines" and " punishments." And the earliest application of the provision in England was in 1689, the first year after the adoption of the Bill of Rights in 1688, to avoid an excessive pecuniary fine imposed upon Lord Devonshire, by the Court of King's Bench. 11 State Trials, 1354.

His Lordship committed an assault and battery on Col. Culpepper in Whitehall and was tried before the King's Bench, and fined 30,000 pounds. It does not appear that there was any appeal, but the case was considered in the House of Lords, and is very valuable for what was said and done. There were three objections considered by the House of Lords to the judgment of the King's Bench. 1. That it was a breach of privilege. 2. That the fine was excessive. 3. The commitment till paid. The Judges of King's Bench were summoned before the House of Lords to give their reasons. The law Lords were asked for their opinions and after full consideration the House of Lords declared " that the fine of 30,000 pounds imposed by the Court of King's Bench, upon the Earl of Devon, was excessive and exorbitant, against Magna Charta, the common right of the subject and the law of the land." In the discussion it was said; " The law for the most part left fines to the discretion of the Judges, yet it is to be such discretion as is defined by my Lord Coke, fol. 56, ' discretio est discernere per legem quid sit justum,' not to proceed according to their own will and private affection, for, ' talis discretio discretionem confundit.' So the question is not, whether the Judges could fine my Lord Devonshire, but whether they have kept themselves within the bounds and limits which the law has set them."

And again it is said in the same case; " It is so very evident as not to be made a question whether in those things which are left to the discretion of the Judges, that the law has set

them bounds and limits, which as God says to the waves of the sea, 'Hitherto shalt thou go and no farther.' * * * But if the Judge may commit the party to prison till the fine be paid, and withal set so great a fine as is impossible for the party to pay, then it will depend upon the Judge's pleasure whether he shall ever have his liberty, and thus every man's liberty is wrested out of the dispose of the law and is stuck under the girdle of the Judges."

Thus it appears both by precedent, and by the reason of the thing, and by express constitutional provision, that there is a limit to the power of the Judge to punish, even when it is expressly left to his discretion. What the precise limit is, cannot be prescribed. The Constitution does not fix it, precedents do not fix it, and we cannot fix it, and it ought not to be fixed. It ought to be left to the Judge who inflicts it under the circumstances of each case, and it ought not to be abused, and has not been abused (grossly) in a century, and probably will not be in a century to come, and it ought not to be interfered with, except in a case like the present, where the abuse is palpable. And when that is the case, then the sleeping power of the Constitution must be waked up to protect the oppressed citizen. The power is there, not so much to draw a fine line close up to which the Judges may come, but as a "warning" to keep them clear away from it.

An argument against the power to review is, that it cannot be made practical, for *we* cannot fix the punishment, but must send the case back to the Court below to fix the punishment, and in that case the Judge below may abate so little of the punishment as to amount to nothing. The Judge below will do no such thing. Our Judges do not act capriciously. We are to suppose that the error already committed was inadvertent, and that the Judge below will do precisely right. If the contrary could be supposed, it would be easy to correct a future error, as the past is corrected.

Again it is said, that it ought to be left to the pardoning power. No, it ought not. The Judiciary ought to be a complete system, capable of affording every remedy while it has the subject and the party before it. After these have past beyond its action, and something supervenes to make it necessary, then the pardoning power may be invoked; and seldom, if ever, in any other case. The Judiciary ought not to admit, and the pardoning power ought not to suppose. that it has done its work imperfectly.

In Lord Devonshire's case a safe rule is laid down by which to judge of the reasonableness of punishment;— " There are two things which have been heretofore looked upon as very good guides, (1) what has formerly been expressly done in like cases, and (2) for the want of such particular discretion, then to consider that which comes nearest to it." If these rules are observed the punishment will be such as is " usual," and therefore not " excessive" or " cruel."

We have already said that the punishment in this case is not only " unusual " but unheard of, and that it is "cruel." It is therefore in violation of the Constitution, and it is our duty so to declare it.

In 1868–'69 the Legislature passed an Act giving to Justices of the Peace jurisdiction of assaults and batteries where no deadly weapon was used and no serious damage done. And again in 1873–'74, the same jurisdiction was given where there was no intent to kill and no deadly weapon used or serious damage done. And a magistrate could not punish by imprisonment exceeding one month. In the case before us there was no intent to kill, no deadly weapon, and no serious (in the sense of dangerous) damage done. That would seem to be a clear expression of the Legislative will that the punishment in this case ought not to exceed one month's imprisonment.

There was a motion here in arrest of judgment. But that cannot be allowed. An appeal in a criminal case vacates

the judgment, and a *certiorari* as a substitute for an appeal has the same effect. So that there is no judgment below and *we* cannot render judgment in a criminal case; and yet the verdict of guilty stands below; and the verdict is regular and proper and there must be a judgment upon the verdict. All that we can do is to declare that there is error in the judgment rendered, and have our decision certified, to the end that the proper judgment may be rendered below. *State.* v. *Cook,* Phil. 535; *State* v. *Manuel,* 4 Dev. & Bat. 20.

There is error. This will be certified.

PER CURIAM. Judgment reversed.