CITY OF WILMINGTON v. HENRY NUTT.

*Liability of Sureties on Official Bond.*

The decision in *Wilmington* v. *Nutt*, as reported in 78 N. C., 177, to the effect that " the sureties on the official bond of a clerk of the superior court of New Hanover county, conditioned according to the provisions of C. C. P., § 137, are liable to an action by the city of Wilmington to recover taxes collected by the clerk upon inspector's licenses under private acts 1870-'1, ch. 6, although the bond was executed prior to

the passage of the act," *accords with both principle and authority, and must stand as first delivered.*

(*State* v. *Bradshaw*, 10 Ire., 229; *Cameron* v. *Campbell*, 3 Hawks., 285; *Crumpler* v. *Governor*, 1 Dev., 52; *Governor* v. *Barr, Ibid.*, 65; *Governor* v. *Matlock, Ibid.*, 214; *Eaton* v. *Kelly*, 72 N. C., 110, cited and approved.)

CIVIL ACTION tried at December Special Term, 1878, of NEW HANOVER Superior Court, before *McKoy, J.*

This action was brought against defendant as surety on the official bond of one James C. Mann, a former clerk of said court, to recover certain moneys alleged to have been collected by said clerk from certain inspectors in Wilmington, under and by virtue of a private act of the legislature, ratified on the 21st of December, 1870, and was heard upon exceptions filed by defendant to the report of a referee. The exceptions were overruled, and the defendant's counsel moved in arrest of judgment on the ground that the complaint did not state facts sufficient to constitute a cause of action, in that, the failure of said Mann to pay over to plaintiff the taxes for inspectors' licenses received by him under a private local act of the legislature, passed after the execution of the official bond of said Mann, as clerk aforesaid, set forth in the complaint, was not in law any breach of the condition of said bond. Motion overruled, judgment, appeal by defendant. See same case 78 N. C. 177.

*Mr. D. L. Russell*, for plaintiff.
*Mr. Geo. Davis*, for defendant.

SMITH, C. J. This cause was before the court at January term, 1878, upon a demurrer to the complaint, and it was held that the moneys received by the clerk, J. C. Mann, for inspectors' licenses were covered by his official bond, and that the defendant, one of his sureties, was liable therefor. The cause now comes up on appeal from the final judgment,

and we are asked to revise and reverse the former decision. The question has been fully and ably re-argued by defendant's counsel, and we have carefully reconsidered the former judgment, with a view to discover and correct any error into which we may have fallen, and failing to do so, we proceed to state the grounds upon which our conclusions rest.

The general rule governing the annexation of new duties to an office for the proper discharge of which an official bond has been taken, is very clearly expressed in the opinion in the case of *United States* v. *Senger,* 15 Wall. 122, wherein the court say : " The official bond of parties undoubtedly cover not merely duties imposed by existing law, *but duties belonging to and naturally connected with their office or business, imposed by subsequent law.* But the new duties should have some relation to, or connection with such office or business, and not be disconnected from, or foreign to both."

The same principle has been declared in this state. In delivering the opinion in *State* v. *Bradshaw,* 10 Ire., 229, RUFFIN, C. J., says : " The principle laid down in *Cameron* v. *Campbell,* 3 Hawks, 285, and in other cases, is a sound one, that when a statute requires a bond from an officer for the faithful discharge of his duty, and a new duty is afterwards attached to the office by statute, such bond given subsequently (an evident misprint for previously) to the latter statute embraces the new duty and is a security for its performance. If it be not so, then with the creation of every additional duty of an officer there would be a necessity for requiring a separate special security which has never been done or thought of."

After referring to the cases of *Crumpler* v. *Govenor, Govenor* v. *Barr,* and *Govenor* v. *Matlock,* all reported in 1 Dev., and some of which were cited and relied on in the argument before us, he proceeds to say that in those cases " it was held that the general words in the conclusion of the general bond of the sheriff did not extend to the public and county

taxes," and that these "exceptions were expressly placed on the ground that the statutes which made it the duty of the sheriff to collect those taxes required separate bonds as securities for each species of tax." To the same effect is the recent case *Eaton* v. *Kelly*, 72 N. C., 110.

If the bond of the clerk had contained a stipulation for the proper performance of the duties of his office, as provided in the former law (Rev. Code, ch. 19, § 8,) and nothing more, it is plain, upon the authority of these cases, that all new duties germane and appropriate to the nature of the office, imposed after execution of the bond, equally with those then existing, would have been protected and secured. But upon the reorganization of the courts under the present system, the condition of the bond was enlarged and made to embrace such duties as "now or thereafter shall be prescribed by law." Now, it may be asked, for what purpose was the change made if, without the additional clause, all new duties appropriate to the office would be secured, and with it none others are? The only reasonable answer to the question is that it was intended to leave to the law-making power, in the exercise of a sound discretion, to determine what further duties could properly be placed upon the officer and to remove all controversy as to what are and what are not within the scope of the office, and thus obviate the very difficulty to which the defendant's interpretation leads. It is not necessary to maintain that this power is unrestricted and that the sureties could be held responsible for any and all duties which the law might prescribe, however foreign to the nature of the office and beyond the contemplation of the parties at the time of executing the bond. But that disputable class which lies along the indistinct line by which they are separated may be by the general assembly assigned a place among the protected duties.

We are next to consider whether the special duty devolved upon the clerk by the local, rather than private, act

of December 21st, 1870, as fairly within that reasonable discretion reserved to the law making power, in this clause of the bond. The act directs the clerk to issue inspectors' licenses on payment of $25 for each, and to pay over to the relators the fees received. Are this service and this obligation so repugnant to the office and its functions, as to lose the security of the official bond? Are they without precedent in being annexed to an existing office, and in the responsibility imposed upon the incumbent? Looking into our own legislation we find that the clerks of the superior courts are by law required to collect the tax imposed on mortgages and deeds in trust. Revenue act of 1876–'77, schedule C: The clerk of this court receives and accounts for the tax on attorneys' licenses, and sheriffs are sometimes charged with the collection of taxes levied by municipal corporations, as in the case of the sheriff of Rowan county made collector for the town of Salisbury. *State* v. *Bradshaw, supra.*

After the passage of the act of congress in 1837, distributing and depositing the surplus money in the treasury among the states, a commissioner for the loan of the money deposited with New York, gave bond with sureties for the performance of his duties. Subsequently and during his continuance in office the legislature increased the fund in his hands by the transfer of other moneys to the amount of $500. He became a defaulter and the sureties were held not to be discharged, the court saying: " The legislature have power at any and all times to change the duties of officers, and the continued existence of this power is known to the officers and his sureties, and the officer accepts the office and the sureties execute the bond with this knowledge. It is the same in effect as though the power was recited in the bond." We cite from Brandt on Sur. and Guar., § 469.

We are referred to a case briefly described in the same work, § 142, which seems to be in opposition to our view.

We have not access to the volume of the reports in which the case referred to is found, and only know such facts as are summarily stated by that author. The assistant treasurer of the United States, who was also treasurer of the branch mint at San Francisco, gave his official bond, with condition for the faithful discharge of the duties of his office, and all "other duties as fiscal agent of the government *which may be imposed by this or any other act."* The act of 1864, which provides for furnishing stamps to assistant treasurers, also provides that bonds for the payment of them might be required. Stamps were sent to the officer, but no such bond was required of him, and he failed to pay for the stamps. The sureties to the general bond were held not liable for the default. And it is said, if congress had supposed the general bond covered the case, why was a new bond provided for ? It is plain this construction is given to this comprehensive clause of the bond, not because in terms it did not embrace the new duty, but because a new bond was contemplated in the act to secure this fund, and the former left in undiminished force for the protection of the primary duty. The decision rests upon the precise ground on which similar general words in the sheriff's process bond are held in the cases in this court, not to extend to the collection of public taxes, for which other and different securities are required.

The result of our re-examination of the question is to confirm the former opinion and we must declare there is no error.

No error.                                    Affirmed.