THE STATE v. JAMES REID.

*Constitution—Assault—Punishment—Discretion.*

Where the defendant was convicted of an assault and battery, and it appeared that the assault was made upon his paramour—a colored woman—with a deadly weapon; that the wound inflicted was serious: that afterwards, and while the indictment was pending, the defendant went to the woman's house and made another assault upon her with a shovel, and the Court sentenced the defendant to imprisonment for twelve months and to pay a fine of five hundred dollars: *Held*, that such judgment was not a violation of the Constitution forbidding excessive or cruel punishment, but, under the circumstances, was a wise and humane exercise of the discretion conferred upon the Court by the statute.

INDICTMENT for assault and battery with a deadly weapon upon Lucy Alexander, tried before *Merrimon, J.*, at November Term, 1889, of the Superior Court of ROWAN County.

There was a verdict of "guilty," and the Court sentenced the defendant to imprisonment for twelve months in the county jail, and to pay a fine of $500 and the costs.

Defendant excepted to the sentence upon the ground that the punishment was cruel, excessive and unusual in such cases, and appealed.

The defendant is a white man, and Lucy Alexander is a mulatto woman, and the case states "that it appeared from the evidence that, on the night·of ___ of _____, 1889, Lucy Alexander was at an entertainment of some kind given by negroes in Salisbury; that she left the place with two negro men and walked down the street. Defendant and another white man followed her for some distance and stopped. The woman and the two negro men stopped, turned around and walked back to where defendant was. The woman said something to defendant, and he struck her with his hand, or fist, knocking her hat off. She stooped and picked up her hat, and again spoke to defendant, using some offensive language, whereupon defendant struck her with a knife in the side, penetrating to the hollow and into one of her lungs, the stab being very near the heart. The defendant then ran off. The woman was confined to her bed for some weeks in consequence of the wound, and is not yet free from its effects."

A witness introduced by defendant testified that defendant said to him, just before he stabbed the woman, that she had called him a "son-of-a·bitch," and that he intended to kill her.

A physician, who examined her wound, testified that if it had been a little higher, it would probably have proved fatal.

During the term of the Court, the defendant went into the woman's house and struck her a severe blow upon the head with a fire-shovel. For this assault he was indicted, and pleaded guilty. He also pleaded guilty at this term of the Court to an indictment charging him and the woman with living together in fornication and adultery. It was stated upon the prayer for judgment that defendant and the woman had been living in fornication and adultery for sev-

eral years, and this statement was not controverted by defendant.

The Solicitor for the State said he would ask the judgment of the Court in one case only. Judgment was accordingly given in the first and suspended in the other two.

*The Attorney General*, for the State.
No counsel for defendant.

DAVIS, J.—after stating the case: The defendant invokes the protection guaranteed by Art. I, § 14, of the Constitution, which forbids excessive bail and the imposition of excessive fines or cruel and unusual punishments.

It is hardly possible, by any fixed or arbitrary rule, to apportion, with exact precision, punishments to offenders, for there are almost as many shades of guilt, and of aggravation or mitigation, to be considered in passing sentence as there are offences committed. In the chapter on crimes (*The Code*, ch. 25), it will be found that, in a large number of cases, limits are imposed, sometimes both a maximum and a minimum, and sometimes only a maximum, within which the discretion of the Court is confined.

There will be found, also, a large number in which the punishment is by fine, or imprisonment, or both, in the discretion of the Court.

This is a legal and not an arbitrary discretion, and must be exercised within the limits of the Constitution and the laws. As was said in *State* v. *Driver*, 78 N. C., 423: "What the precise limit is cannot be prescribed. The Constitution does not fix it, and we cannot fix it, and it ought not to be fixed. It ought to be left to the Judge who inflicts it under the circumstances of each case, and it ought not to be interfered with, except when the abuse is palpable."

In *State* v. *Pettie*, 80 N. C., 367, in which an imprisonment in the county jail for two years for an aggravated assault

and battery, in that case committed by the defendant on his wife, was held not to be a violation of the Constitution, the Court said: "There being no specific punishment provided by statute for such offence, it was the duty of the Judge, in the exercise of his legal discretion, to fix upon the term of imprisonment suited to the case, without restriction, save that in the Constitution, which forbids 'cruel or unusual punishments' to be inflicted."

The facts set out by his Honor in the case on appeal, exhibit such wicked conduct on the part of the defendant as to call for exemplary punishment adequate to correct him, and to deter others from offending in a like manner. It appears, from the testimony of the physician, that the defendant owed it to a kind Providence, which was not on the side of his guilty intent, that the wound was not fatal, when the punishment might have been capital

The only circumstance offered in mitigation was the vulgar epithet applied to him by the woman. Whatever might have been the sting inflicted by her language, it appears from the facts that she was his partner in the crime of fornication and adultery, and however great the provocation might have been, under other circumstances, he was not less in fault nor less excusable than she.

As, since the act of 1887, the judgment is not vacated by the appeal, and it cannot affect the sentence in this case, we may be permitted to say that, so far from transcending the reasonable boundary of just punishment, we think his Honor was safely and humanely within the limit allowed by the reasonable exercise of his discretion.

Affirmed.