(886) Defendant was indicated in two separate bills for an assault with a deadly weapon on Huley Mangum, and carrying a concealed weapon, with which the assault was alleged to have been committed. By consent, the two cases were consolidated and tried together. At the close of the evidence the court adjourned from Tuesday to Wednesday, and on the latter day, when the trial was resumed, defendant pleaded guilty to the indictment for carrying a concealed weapon. Huley Mangum, witness for the State, testified: "I was driving along the road one Sunday afternoon. Saw two buggies standing on one side of the road with their horses headed in an opposite direction from that in which I was going; two men were on the front of the buggy, the other two men were out tusseling in the road. As I drove up I said, `Look out' and drove on by, and my front wheel struck the leg of the defendant, who was one of the men in the road. Then the defendant caught my rear buggy wheel. I then told defendant to turn the wheel loose or I would make him turn it loose; thereupon I struck the horses I was driving and they jerked the wheel away from the defendant. Defendant then threw dirt and rocks at me, and, when I got farther away, took a pistol from his pocket and shot at me several times; one ball fell in a yard near me; saw it hit a limb on a pear tree; others went over my buggy; and then he fired across the fields in another direction. My wife was on the buggy with me. I was on a top buggy with curtains up, but saw the defendant take the pistol from his pocket and shoot several times."
The defendant testified that he and Roger Coley were driving along the road on a buggy, and they met Demie Champion and Louis Champion on another buggy. The Champions had a jug of wine and asked them to have a drink, and drove their buggy out to the right side of the road; he and Coley drove past them and turned around, and stopped their buggy just behind the one on which the Champions were sitting. He and Coley then got off their buggy and went to the other one to get *Page 945 
the wine. While he was standing by Champion's buggy, Huley Mangum came along; they had given more than half of the road. Mangum drove his front wheel against defendant, striking and skinning his leg, and would have struck him with the hind wheel had he not caught the wheel. Mangum made no stop, but struck his horses with whip and threw the defendant down into the ditch and drove on. While he was down in the ditch some one fired a pistol twice; did not see who it was. He had a pistol in his pocket, but did not take it out at all. He had carried it for six months; he carried it because his life had been threatened; certain men thought he had informed revenue officers about their stills, and threatened to kill him, and had waylaid him and shot at him many times. On cross-examination he was asked if he had not left the State to escape the process of the court. He said he had not; that he went to Arkansas last fall to visit his relatives; did not know that the (887) grand jury had presented this matter, but when his people at home wrote him that the sheriff was looking for him, he came home and surrendered himself and gave bond for his appearance. The defendant introduced W. S. Hockaday and W. G. Ray, who testified to the good character of the defendant.
The State then introduced Demie Champion, and after him Louis Champion. They testified substantially the same as did the defendant, stating that he did not see any one shoot, and did not see defendant have a pistol, but heard two shots fired from behind them; their horse became unmanageable, and they did not see who it was that did the shooting. Lyon testified that he was some distance away, but heard two shots; could not see the person who fired; he went on down the road, up one hill, down and up another, and saw two buggies and Roger Coley and defendant and two other white men he did not know and had not seen since; defendant was standing by a buggy with his pistol in his hand. Defendant, recalled, denied seeing Lyon or having a pistol in his hand. Roger Coley was not present at the trial. State closed. This was Tuesday afternoon about the usual hour for adjournment of court. The judge requested the jurors to get their hats and go out quietly, and asked everybody to remain seated till court was adjourned. He then called up the two State's witnesses, Demie and Louis Champion, and the defendant, and reprimanded them severely for false swearing, and required them to give bonds for their appearance next morning to answer the charge of perjury. The two Champions, upon his order, were taken in custody by the sheriff and seated with the prisoners from jail. After some time he told the clerk to take the recognizance of the Champions to appear next day, and said the defendant was already under bond to appear in the cases then before the court. On next morning by leave of the court, the defendant recalled W. G. Ray, who testified that the *Page 946 
character of the two Champions was good and that of the two negroes, Huley Mangum and Lyon, was bad.
The solicitor accepted service of the defendant's case, but filed no exceptions thereto or counter-case, and the appeal was heard in this court on the case tendered by the defendant, who appealed from the judgment of the court imprisoning him for thirty days, and assigned as error that the punishment was cruel and unusual.
It is no defense to a charge of unlawfully carrying a concealed weapon that it was done for the (888) purpose of self-defense. S. v. Speller, 86 N.C. 697; S. v. Woodfin, 87 N.C. 526; S. v. Brodnax, 91 N.C. 543. The guilt appears legally from the intent to carry the weapon concealed. S. v. Dixon,114 N.C. 850; S. v. Pigford, 117 N.C. 748; S. v. Brown, 125 N.C. 704. The above cases show that one of the mischiefs intended to be remedied is the practice of carrying concealed weapons to be used on an emergency. Justice Ashe said in S. v. Brodnax, supra: "The mischief intended to be remedied by the statute was the practice of wearing offensive weapons concealed about the person, or carrying them so concealed with a purpose to be used offensively or defensively upon an emergency." And Justice Ruffin said, in S. v. Speller, 86 N.C. 697: "The right to wear secret weapons is no more essential to the protection of one man than another, and surely it cannot be supposed that the law intends that an unwary advantage should be taken even of an enemy. Hence it takes no note whether the secret carrying be done in a spirit of foolish recklessness or from a sense of apprehended danger, but in either case declares it to be unlawful. Indeed, were there any difference made we might expect it to be against one who felt himself to be under some pressure of necessity, since in his case the mischievous consequences intended to be avoided might the more reasonably be anticipated. And it would be a strange passage in the history of legislation to enact that it shall be unlawful for any person to carry concealed weapons about his person except when it may be supposed he shall have occasion to use them." The learned counsel for defendant does not contend that the apprehension of danger would justify the defendant in carrying a concealed weapon, but merely that it should be considered, in the admeasurement of punishment, as an extenuation of the offense, and upon the question he raises as to whether the sentence to confinement in the jail was cruel and unusual. We have cited the above cases and quoted therefrom *Page 947 
the very language of the Court in order to show that carrying a concealed weapon for a hostile or even a defensive purpose, instead of being an excuse for the act, or mitigation of the crime, tends rather to aggravate the offense, and amounts to doing precisely what the statute plainly intended to forbid. The serious consequences which the Legislature had in mind and which were provided against by the law, are what the State alleges have followed, in this case, the defendant's violation of the statute. Whatever his motive was, he deliberately broke the law by carrying a weapon concealed on his person.
We may assume, for the sake of discussion, the jurisdiction of this Court to review a judgment below, upon the ground that the particular punishment imposed by the court is "cruel and unusual," where the law gives to the judge a discretion to fix the punishment, as it does in respect to this crime. Revisal, sec. 3708. S. v. Manuel, 20 N.C. bottom page 122 (4 Dev. and Bat., 20); S. v. Driver, 78 N.C. 423. In (889) the Driver case the Court held that "there is a limit to the power of the judge to punish, even when it is expressly left to his discretion. What the precise limit is cannot be prescribed. It ought to be left to the judge who inflicts it under the circumstances of each case, and it ought not to be abused." The Court adds that it ought not to be interfered with "except where the abuse is palpable." In S. v. Manuel, supra,Judge Gaston, discussing the question now before us, said: "There are great if not insuperable difficulties undertaking to pronounce any fine excessive which the Legislature has affixed to an offense. It must be admitted that the language of this section of the Bill of Rights is addressed directly to the judiciary for the regulation of their conduct in the administration of justice. It is the court that requires bail, imposes fines, and inflicts punishment, and it is commanded not to require excessive bail, not to impose excessive fines, not to inflict cruel or unusual punishment; and it would seem to follow that this command is addressed to it only in those cases where it has a discretion over the amount of bail, the quantum of the fine, and the nature of the punishment. No doubt the principles of humanity sanctioned and enjoined in this section ought to command the reverence and regulate the conduct of all who owe obedience to the Constitution. But when the Legislature, acting upon their oaths, declare the amount of bail to be required, or specify the fines to be imposed, or prescribe the punishments to be inflicted in case of crime; as the reasonableness or excess, the justice or cruelty of these are necessarily questions of discretion, it is not easy to see how this discretion can be supervised by a coordinate branch of the Government. Without attempting a definite solution of this very perplexing question, it may at least be safely concluded that unless the act complained of (which it would be almost indecent to suppose) contain such a flagrant violation *Page 948 
of all discretion as to show a disregard of constitutional restraints, it cannot be pronounced by the judiciary void because of repugnancy to the Constitution." But the statute in regard to carrying concealed weapons has left the punishment to the sound discretion of the trial court, the exercise of which in any given case will not be reviewed save where there has been gross or palpable abuse. In S. v. Hamby,126 N.C. 1066, the defendant was convicted of carrying concealed weapons and sentenced to confinement in the county jail for two years, and assigned to work on the public roads. It was held that the punishment was not unusual, and in S. v. Farrington, 141 N.C. 844, the defendant was indicted for unlawfully retailing liquor and sentenced to work one year on the public roads. The punishment was declared to be within the law and not cruel or unusual, the Court saying: "It is equally (890) settled that when no time is fixed by the statute, this Court will not hold an imprisonment for two years to be cruel and unusual," citing S. v. Driver, supra; S. v. Miller, 94 N.C. 904. And S. v. Dowdy.145 N.C. 433, is to the same effect, except that the defendant in that case was sentenced to serve two years on the public roads for unlawfully selling liquor, instead of one year as in S. v. Farrington, supra. In theMiller case the defendant was fined $2,000 and imprisoned one month for keeping a gambling house, and the punishment was held not to be cruel and unusual within the prohibition of the Constitution, the Court through Chief Justice Smith saying: "As the measure of punishment, within the limits of the law, for the offense is and must be within the discretion of the judge, as he may estimate its criminality, so must be his hearing or refusing to hear a petition for its change or modification, and testimony in relation thereto. It might obstruct or paralyze the administration of criminal justice if this Court were to undertake to revise that discretion, or listen to suggestions that it has been unwisely exercised in a particular case. The judge who tried the cause and heard the testimony is the best as he is in law the sole judge of the merits, and if he acts within the boundaries prescribed by law, his decision is final and unreviewable in the appellate court."
We have referred to the above cases for the purpose of disclosing the extreme trend of judicial thought upon this subject. Our opinion is that the learned judge kept entirely within the bounds of the law when he imposed the punishment of thirty days confinement in the jail. While the jury acquitted defendant of the other charge, because, as they explained to the judge, the evidence had not satisfied them of the defendant's guilt, the verdict did not estop the judge, or deprive him of the right to form his own opinion of the defendant's guilt, and to consider it as a circumstance in estimating the degree of punishment he should impose for carrying the concealed weapon. The prosecutor had testified *Page 949 
positively and directly to defendant's guilt in the assault case, and two other witnesses who were present said that they heard two pistol shots, and Lyon stated that he heard the report of two shots and saw defendant standing by the buggy with a pistol. Defendant denied that he had used his pistol, but the evidence was calculated to make and did make an impression on the judge quite different from that it seems to have made on the jury. He evidently thought that Demie and Louis Champion had not told all they knew and had testified falsely as to not knowing who had fired the pistol, and also that defendant had testified falsely when he stated that he had not used his pistol. Who else than the defendant could have fired the pistol, unless it was Coley? and the evidence tends to show that it was not he. There is no doubt that a pistol was fired. Who is more likely to have fired it than defendant, the only one, so far as the evidence shows, who had a pistol? The (891) judge heard the witnesses testify, and saw the other incidents of the trial. The demeanor of the Champions and the defendant seems to have impressed him very unfavorably. His conclusion is much more reliable than any opinion we could form, if we had the power to review it at all, or even the inclination to do so. It will not, therefore, be disturbed.
We are unable to see how the legality of the punishment can be affected by the other matters stated in the record — the fact that the judge ordered witnesses into custody for perjury, or that he appeared to disapprove the verdict and asked the jury why they had rendered it. Whether the punishment was cruel or unusual depends upon the nature of the crime and the circumstances under which it was committed and other relevant facts. What evidence the judge will hear upon the question of punishment is for him to determine. If the case is considered with many others, where the judgments have been sanctioned by this Court, it will be found that the defendant has not by any means been harshly dealt with, but has fared well in comparison, and, therefore, has nothing of which to complain. As said in Farrington'scase, supra, while we disclaim any intention to review the judgment below upon its merits, we may properly say that the facts and circumstances of the case amply sustain the judgment. The defendant was not observing the Sabbath very reverently — drinking wine, carrying a pistol, and otherwise behaving in an unseemly manner — to say the least of it. He claims to have carried the pistol in self-defense, but appeared to be ready for a fight on small provocation, and quick with the trigger. While he was acquitted, the evidence against him in the case for assault seems to have been very strong and was sufficiently so to justify, of itself, the sentence of the court, if it needed any such justification. He cannot be punished for one offense merely because he has committed another, but his general conduct may be considered in gauging punishment. *Page 950 
We are not prepared to say that this Court cannot review the judge, as to the quantum of punishment, even where there is a limit set to the exercise of his discretion; but if the right exists, we will not do so except in a plain case, where the violation of the constitutional provision is palpable, and not involved in any doubt — a case not likely to occur.
The oral argument of defendant's counsel on the general question involved, which is carefully epitomized in his brief, was able and instructive, and has received our close attention; but after further examination we regard the law, as stated by us, to be well settled by a great mass of authority.
No error.
Cited: S. v. Mincher, 172 N.C. 900 (3j); S. v. Smith, 174 N.C. 806 2d;S. v. Jones, 181 N.C. 544(2cc, 3c); S. v. Mangum, 187 N.C. 479 (1c); S. v.Mangum, 187 N.C. 480 (2c, 3c); S. v. Griffin, 190 N.C. 138 (2cc); S. v.Fleming, 202 N.C. 514 (2cc); S. v. Calcutt, 219 N.C. 565 (2c, 3c); S. v.Stansbury, 230 N.C. 591 (1c).
(892)