STATE v. H. D. GRIFFIN.

(Filed 23 September, 1925.)

**1. Appeal and Error—Newly Discovered Evidence—Motions—New Trials.**

In criminal actions, the Supreme Court will deny a motion for a new trial made upon the ground of newly discovered evidence.

**2. Evidence—Criminal Law—Courts—Appeal and Error.**

Where upon the trial of a criminal action a witness is permitted to testify to the admissions made to him by one of several defendants as to his guilt, and the witness states the names of others participating in the offense charged, it is within the power and duty of the trial judge

to exclude the evidence as to the other defendants upon trial, by such remarks as to make it nonprejudicial as to them, and where he has sufficiently done so, it may not be held for error on appeal.

**3. Constitutional Law — Punishment — Statutes — Discrimination—Sentence—Court's Discretion—Appeal and Error.**

Upon conviction of the criminal offense inhibited by C. S., 4210, a sentence of the court for a period within that allowed by statute will not be considered on appeal as a cruel or unusual punishment against the provision of our Constitution, Art. I, sec. 14, or discriminatory against the principal actor in committing the crime, when the others participating therein to a less extent have been sentenced for shorter terms, the sentences imposed being left largely in the discretion of the trial court, and in the absence of an abuse of this discretion not reviewable on appeal.

APPEAL by defendant from *Sinclair, J.,* at May Special Term, 1925, of MARTIN.

The defendant and two others were convicted of a breach of section 4210 of the Consolidated Statutes and another defendant of a breach of section 4211. The defendant appealed and now presents two assignments of error.

The first relates to the admission of evidence. E. D. Dodd, a witness for the State, testified to the following conversation between him and J. O. Bullock, one of the convicted defendants, who, while imprisoned, inquired of the witness when he could get out of jail: "I told him I had no idea in the world; that I knew nothing about court procedure or jail cases, and that I came here at the request of his brother; and I said: 'If you want to make a clean-breast statement of this thing, and you know anything about it and will tell it, I will ask Mr. Gilliam to do what he can for you'; and then he went ahead and told what he said was all he knew. He said he was in it; that he was sorry, but he was in it; and then he gave the names of those who were in it.

"Q. All right, who did he say was in it?

"Counsel for defendant object.

"The Court: I will exclude it. I will not permit him to name any defendant on trial. I will permit him to give the names of all of those he says Bullock gave him, with the exception of the defendants in this case, and I instruct the jury not to consider it in any respect as evidence against those now on trial except as against Bullock himself.

"The same witness then continued: 'Shall I read the names as I have them here except the ones on trial?'

"Counsel: Will you give us an exception to that statement?

"The Court: No, sir; I will not. The witness asked me a question privately; the jury did not hear it, and it is not a part of the record. Gentlemen of the jury, there is no evidence before the court that any of these men on trial had their names on this list at all.

STATE v. GRIFFIN.

"These are the names as he gave them to me: Roy Gray, James H. Gray, Louis Johnson, Grady Smith, Edgar Johnson, Sherwood Robinson, Elder Stone, Lester Edmonson, Lory Croom, young boy Griffin— he didn't know his name; said he didn't—Thomas Harrell. I am giving you exactly what he gave to me. Hugh Robinson was to go, but he didn't know whether he went or not.

"Solicitor: Don't give the balance of them.

"Witness: Yes, sir; the others have bearing on these defendants.

"Counsel: I think we would be entitled to have those remarks reduced to the record. He said the rest of it bears on these defendants.

"The Court: Gentlemen of the jury, there is no suggestion that any of the defendants except Bullock had their names on that list at all.

"Motion by defendant to strike out the evidence. Motion denied; defendant excepted."

The second assignment involves the question whether the punishment imposed is cruel or unusual, the defendant having formally excepted to the judgment pronounced.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*J. D. Paul, H. W. Stubbs, and H. C. Carter for defendant.*

ADAMS, J. Pending the appeal, and immediately before the argument, the defendant filed a written motion for a new trial on the ground of newly discovered evidence. The motion, of course, must be denied. In *S. v. Lilliston,* 141 N. C., 857, it is said that because the Court has no jurisdiction it has never entertained a motion of this kind, and that by uniformity of practice and decision the point has been definitely settled against the defendant's present contention. There are many cases to this effect. *S. v. Flood, post (per curiam); S. v. Hartsfield,* 188 N. C., 357; *S. v. Williams,* 185 N. C., 643, 664; *S. v. Jenkins,* 182 N. C., 818; *S. v. Ice Co.,* 166 N. C., 403; *S. v. Arthur,* 151 N. C., 653; *S. v. Turner,* 143 N. C., 641; *S. v. Register,* 133 N. C., 747; *S. v. Council,* 129 N. C., 511; *S. v. Edwards,* 126 N. C., 1051; *S. v. Rowe,* 98 N. C., 629; *S. v. Starnes,* 97 N. C., 423; *S. c., 94 N. C., 973.

In reference to the exceptions concerning the admission of evidence, it is to be noted that this Court has frequently approved the withdrawal of incompetent testimony and the judge's direction to the jury not to consider it. "It is undoubtedly proper and in the power of the court to correct a slip by withdrawing improper evidence from the consideration of the jury or by giving such explanation of an error as will prevent it from misleading a jury"—*Ruffin, C. J.,* in *McAllister v. McAllister,* 34 N. C., 184. See, also, additional citations in *S. v. Stewart,*

189 N. C., 340. But in the case before us the learned judge did not admit incompetent evidence; if there was inadvertence or error, it was that of the witness. His Honor was alert and vigilant to see that any remark prejudicial to the defendant or even susceptible of misconstruction should not be considered by the jury. He carefully restricted the evidence to the question of Bullock's guilt and gave an explicit instruction that there was no suggestion that the name of any other defendant was on the list of names furnished by Bullock to Dodd. If the trial judge may correct his own inadvertence *a fortiori* may he correct the inadvertent or improper statement of a witness upon the stand. If it were otherwise, orderly procedure and the administration of justice would be well nigh impossible. 38 Cyc., 1315; Jones on Evidence, sec. 815; *S. v. Miller,* 75 N. C., 73; *S. v. Spivey,* 151 N. C., 676, 681.

The remaining exception relates to the constitutional inhibition against cruel or unusual punishment. It is provided that upon conviction of the crime denounced in C.. S., 4210, the offender shall suffer imprisonment in the State's prison for not less than five nor more than sixty years; and under this provision and by virtue of this authority the defendant was sentenced to hard labor in the penitentiary for the determinate period of thirty years. Other defendants received sentences ranging in duration from six to ten years; and the defendant insists that the quantum of punishment meted out to him is discriminatory and a palpable violation of the constitutional provision. There is evidence, however, tending to show that the maim charged in the indictment (the most aggravated defined in the statute) was maliciously inflicted by the defendant; and this, no doubt, was considered by his Honor when judgment was pronounced.

In 1688 the Bill of Rights (1 Will. & Mar., sess. 2, c. 2), after reciting the various ways in which James II had infringed upon the liberties of the subject, declared in section 10: "Excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Ridge's Constitutional Law of England, 9. The Federal Constitution contains a similar provision, the Eighth Amendment substituting the word "shall" for the word "ought." In the State Constitution of 1776 the language is, "That excessive bail should not be required, nor excessive fines imposed, nor cruel nor unusual punishments inflicted." Declaration of Rights, sec. 10. This section, with a slight change of phraseology, appears in the Constitution of 1868, Art. I, sec. 14.

In *Wilkerson v. Utah,* 19 U. S., 130, 25 Law Ed., 345, it is said, "Difficulty would attend the effort to define with exactness the extent of the constitutional provision which provides that cruel and unusual punishment shall not be inflicted"; and in *Weems v. United States,* 217

U. S., 349, 54 Law Ed., 793, *Mr. Justice McKenna* remarked, "What constitutes a cruel and unusual punishment has not been exactly decided." To the same effect is the language of *Mr. Justice Reade*: "What the precise limit is cannot be prescribed. The Constitution does not fix it, precedents do not fix it, and we cannot fix it, and it ought not to be fixed. It ought to be left to the judge who inflicts it under the circumstances of each case," etc. *S. v. Driver,* 78 N. C., 423, 429. In respect to the measure of punishment regard should always be had to the circumstances developed on the trial, since the presiding judge usually has opportunity to acquire accurate information. *S. v. Pettie,* 80 N. C., 267.

As we have indicated above, the maximum punishment prescribed by the statute is imprisonment for a term not exceeding sixty years. With respect to such statutory provision, in *Weems v. United States, supra,* it is said: "We disclaim the right to assert a judgment against that of the Legislature, of the expediency of the laws, or the right to oppose the judicial power to the legislative power to define crimes and fix their punishment, unless that power encounters in its exercise a constitutional prohibition. In such case, not our discretion, but our legal duty, strictly defined and imperative in its direction, is invoked. Then the legislative power is brought to the judgment of a power superior to it for the instant. And for the proper exercise of such power there must be a comprehension of all that the Legislature did or could take into account—that is, a consideration of the mischief and the remedy. However, there is a certain subordination of the judiciary to the Legislature. The function of the Legislature is primary, its exercise fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of its wisdom or propriety. They have no limitation, we repeat, but constitutional ones, and what those are the judiciary must judge. We have expressed these elementary truths to avoid the misapprehension that we do not recognize to the fullest the wide range of power that the Legislature possesses to adapt its penal laws to conditions as they may exist and punish the crimes of men according to their forms and frequency."

In *S. v. Manuel,* 20 N. C., 144, 159, 161, *Judge Gaston* expressed a similar opinion: "The right of the Legislature to prescribe the punishment of crimes belongs to them by virtue of the general grant of legislative powers. It is a power to uphold social order by competent sanctions. Unless they be restricted, and so far only as they are restricted by constitutional prohibitions, it is a power in the Legislature to accomplish the end by such means as in their discretion they shall judge best fitted to effect it. . . . Now, there are great, if not insuperable, difficulties in a court undertaking to pronounce any fine excessive which

the Legislature has affixed to an offense. It must be admitted that the language of this section of the Bill of Rights is addressed directly to the judiciary for the regulation of their conduct in the administration of justice. It is the courts that require bail—impose fines—and inflict punishments—and they are commanded not to require excessive bail—not to impose excessive fines—not to inflict cruel or unusual punishments—and it would seem to follow that this command is addressed to them only in those cases where they have a discretion over the amount of bail, the quantum of the fine, and the nature of the punishment. No doubt the principles of humanity sanctioned and enjoined in this section ought to command the reverence and regulate the conduct of all who owe obedience to the Constitution. But when the Legislature, acting upon their oaths, declare the amount of bail to be required, or specify the fines to be imposed, or prescribe the punishments to be inflicted in case of crime, as the reasonableness or excess, the justice or cruelty of these are necessarily questions of discretion, it is not easy to see how this discretion can be supervised by a co-ordinate branch of the government. Without attempting a definite solution of this very perplexing question, it may at least be safely concluded that unless the act complained of (which it would be almost indecent to suppose) contains such a flagrant violation of all discretion as to show a disregard of constitutional restraints, it cannot be pronounced by the judiciary void because of repugnancy to the Constitution."

The judgment pronounced being within the limits of the law was also in the discretion of the presiding judge, and is not subject to review in this Court. *S. v. Miller,* 94 N. C., 904; *S. v. Woodlief,* 172 N. C., 885.

We find

No error.