## STATE v. HAMAN MILLER.

A defendant, under an Act of Assembly, has a *right* to have more than one of his counsel, or all that represent him, heard by the Judge and jury in his defence, upon his trial in the Superior-Court. The presiding Judge has no authority to refuse to hear but one, or to restrict the counsel in their remarks, to any particular length of time.

Can a Judge of the Superior Court imprison a defendant, convicted of an assault with intent to kill, in the County Jail for five or more years. *Quere?*

(*State* v. *Collins* and *Blalock*, 70 N. C. Rep., 307, cited and commented on.)

INDICTMENT, for an *Assault*, with intent to kill, tried before KERR, J., at Spring Term, 1876, of RANDOLPH Superior Court.

At the conclusion of the evidence, his Honor remarked that he would hear but one of the prisoner's counsel, he being represented by three. One of the counsel thereupon addressed the jury, and at the conclusion of his remarks, another of the counsel arose and stated to the Court that, in order to make a proper presentment of the defendant's case, it was necessary that another of the counsel should address the jury, and asked permission so to do. The Court refused to hear the counsel. The prisoner excepted.

There was a verdict of guilty, and motion for a new trial. The motion was overruled, and the prisoner appealed.

*Attorney General Hargrove*, for the State.
*Tourgee*, for the prisoner.

READE, J. Anciently, and until lately the Judge, holding his Court, was the principal personage. He was clothed with the insignia of dignity, and represented majesty—the majesty of the law. It is so now to some, but not to the same extent. We have no disposition to enter upon the discussion, whether the change is for the better or for the worse.

It may still be said that the Judge *holds* his Court as a driver holds the reins, (Webster) to govern, guide, restrain, except where he is himself restrained by law.

The restraints which have been put upon the Judges in this State have been very few. Some twenty-five years ago a Circuit Judge restrained a lawyer from arguing the *law* to the *jury*, suggesting that the argument of the law ought to be addressed to the Court, as the jury had to take the law from the Court. Umbrage was taken at that, and the Legislature passed an act allowing counsel to argue both the law and the facts to the jury.

And again, some two years ago, a Circuit Judge, in a criminal case, restricted the prisoner's counsel to one hour and a half in addressing the jury, allowing two of the counsel to divide that time between them. From that ruling, there was an appeal to this Court. We expressed our disapprobation with its exercise in that case, but still we held that it was a power vested in the presiding Judge, and that we could not control its exercise. *State* v. *Collins* and *Blalock.* And thereupon the Legislature passed an Act, as follows: " That any counsel appearing in any civil or criminal case in any of the Courts of this State shall be entitled to address the Court or the jury for such a space of time as in his opinion may be necessary for the proper development and presentation of his case."

That is about as broad as language can make it. *Any* counsel *appearing* * * * * * may address either the *Court* or the *jury*, as long as he pleases.

In the case before us, his Honor, upon closing the testimony, remarked that he would hear but one counsel for the defence. There were three counsel "appearing" for the defence, and they insisted that it was necessary that two of them should be heard; but his Honor refused. The question is, whether the defendant had the *right* to have two of

his counsel address the Court and jury, or whether it was discretionary with his Honor to refuse to hear more than one.

Nothing can be clearer from the language of the act, and from the history of the legislation upon the subject, than that it was the intention of the Legislature to give to persons, charged with crime, the full benefit of counsel. Indeed, it is a Constitutional privilege. Precisely how to allow this privilege, without the chances of occasional abuse, may be found to be difficult, if not impossible. It certainly cannot be supposed to be the policy of the Legislature to embarrass the Courts so that they cannot dispatch business. Nor can it be supposed that it would, from any pique, subject the Judges to indignity. What we have to suppose is, that it is to be left to the discretion of *counsel*, instead of to the discretion of the *presiding Judge*, how they shall address themselves to the Court and jury. It must be left either to the Judge or the counsel; and the Legislature has left it with the counsel. It may be that the confidence is not misplaced. But one instance is recorded (see dissenting opinion in *State* v. *Collins* and *Blalock*) where any counsel has felt himself at liberty to abuse his privileges to the obstruction of the due administration of the law. And that was before the profession had many of the advantages which they now possess; and it may be before it was fully known that " we cannot do evil that good may come of it." At any rate, the law is plain, and the experiment has to be made whether it is prudent to entrust the discussion in the Courts to the *counsel* instead of to the *Judge*.

It is suggested that the control of the subject is divided between the Court and the counsel—that the Court may limit the *number* of counsel speaking to *one*, and then that *one* may speak as long as he pleases.

The foundation for this suggestion is Rev. Code, chap. 31, sec. 15. " The plaintiff or defendant may employ several

attorneys in his case, but more than one shall not speak thereto unless allowed by the Court."

From that it is insisted that if the Court is allowed to limit the number speaking to *one,* then that *one* cannot have the physical ability to consume an unreasonable length of time.

There are several objections to that construction. In the first place, when we have an act the avowed object of which is to give the defendant *unlimited time,* it would be discreditable by an evasion to deprive him of the benefit of it by saying that " unlimited time " means as long as one frail counsel, already worn out with a long trial, can stand up and speak. It is always uncomely in anybody, and especially in a Court, to try how near they can come to disregarding a law without incurring responsibility. It is due to every law that it should have its full effect, not grudgingly given. And then if seen to be mischievous it may be the sooner corrected. Here we have three laws: First, that every one charged with crime shall be entitled to counsel; but nothing is said about the number. Secondly, we have an act (Rev. Code) allowing him to have as many as he pleases, with the power in the presiding Judge to limit the speaking to one; and thirdly, the late act which allows *any* of his counsel appearing in the case to speak as long as *he* pleases. It is said that the effect of this will be to obstruct the administration of justice. But then who is to be the Judge of that? Judge WATTS, in *Collin's* and *Blalock's* case, thought he was the Judge, and undertook directly and avowedly to limit the time to an hour and a half, to be occupied by two counsel. And the Legislature immediately said that shall not be, but any counsel appearing in the case may speak as long as he pleases. And then Judge KERR, in this case, thought he would be the Judge, and that he would do indirectly what the act prohibited from being done directly—limit the *time* by limiting the *number.* Why

limit the number except to limit the time? What does it matter to the Judge whether one or a dozen speaks, except as it affects the *time* of the Court. It was not mere caprice in his Honor in not wanting to hear two counsel: but it was to save the time of the Court. And *that* the Legislature has said he shall not do, so as to deprive any counsel appearing of the right to speak as long as he pleases.

For this error there must be a *venire de novo.* This makes it unnecessary to notice several other grounds which were argued before us, as they may be avoided on the next trial. But there is one interesting and important question which must arise if the defendant is convicted. Can his Honor imprison him for five years in the county jail?

The crime charged is an assault—not a battery—with intent to kill. It is a serious one against society and ought to receive exemplary punishment, but it is not classed with the highest grade of offences where the punishment is usually specified by the Legislature, but is left to fine or imprisonment, or both, at the discretion of the presiding Judge. Bat. Rev., chap. 32, sec. 111.

It is, for instance, not an offence of as grave a character as those enumerated in sec. 48. " If any person shall on purpose and unlawfully, but without malice aforethought, cut or slit the nose, bite or cut off a nose or lip, or disable any limb or member of any other person, or castrate any other person, or cut off, maim or disfigure any of the privy members of any other person with intent to kill, maim, &c., shall be imprisoned at least six months and fined at the discretion of the Court." In our case his Honor imprisoned the defendant for five years, not in the penitentiary, where one may live so long, but in the county jail, where it is strongly probable that confinement and fetid air would cause a lingering death. The oldest member of this Court does not remember an instance of five years' imprisonment in a county jail for *any* offence.

Since the establishment of our penitentiary it would seem to be the intention of the Legislature to make all long terms of imprisonment in that institution, so that while the convict is undergoing punishment he may be made useful, and his health and morals guarded.    And so it was provided in the Penitentiary Act, Bat. Rev., chap. 85, sec. 41 : " Criminals in any of the jails of the several counties under sentence of imprisonment for a longer term than twelve months may be conveyed by the sheriff to the penitentiary." The intention of this was to rid the jails of all persons who had been sentenced there for more than a year.    And yet, what good would that do if they could be immediately filled up for five years ?

We will not pursue the matter further, and do not decide it ; but only invite attention to it.    Can a man be imprisoned in the county jail five years at the discretion of the Court ?

Certify this.

PER CURIAM.                              *Venire de novo.*