E. E. MENDENHALL, Administrator of Jason Mendenhall, v. NORTH CAROLINA RAILROAD CO.

(Decided November 22, 1898.)

### *Measure of Damages.*

Where life is lost by reason of the negligent management of a railroad train, the measure of damages is the present value of the net pecuniary worth of the deceased, to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy.

CIVIL ACTION for damages for injuries to plaintiff's intestate resulting in his death, and for destruction of his property, caused by a collision with defendant's train; tried before *Allen, J.*, at Fall Term, 1898, of the Superior Court of DAVIDSON County.

The issues were as follows:

1. Was the plaintiff's intestate's horse killed by the negligence of defendant's lessee?   Answer: Yes.

2. Was the death of plaintiff's intestate and the injury to his wagon and harness, caused by the negligence of defendant's lessee, as alleged?   Answer: Yes.

3. Did the plaintiff's intestate, by his negligence, contribute to his own injury?   Answer: No.

4. Notwithstanding the contributory negligence of the intestate, could defendant's lessee by the exercise of ordinary care have avoided the collision.   Answer: ——.

5. What damage is plaintiff entitled to recover?   Answer: $3,000.

There was a motion by defendant to set aside the verdict, because it was excessive and not warranted by the evidence.

Upon an intimation of the Court that it would modify the verdict as to damages, plaintiff submitted that it be reduced to $2,100, and there was judgment accordingly, and defendant appealed from the judgment as rendered.   The exception taken was to the charge of his Honor upon the measure of damages, and to his declining to give the instruction asked for by the defendant on that subject.

The instruction asked for and the Judge's charge appear in the opinion.

*Mr. G. F. Bason*, for defendant (appellant).
*Mr. B. F. Long*, for plaintiff.

MONTGOMERY, J.:   The intestate of the plaintiff was so badly injured on the railroad track of the defendant company in a collision with its engine that he died a few hours after he received the injury, and this is an

action brought by the administrator to recover damages on the allegation that they were caused by the death of the intestate, and that his injury and death were caused by the negligence of the defendant. The defendant made numerous exceptions to the charge of the Court below, but argued none of them in this Court, nor are they alluded to in the brief filed in the case. We have, however, examined the charge carefully and find in it no error of which the defendant company could complain. The defendant asked the Court to charge the jury that "if they should believe that the intestate made no more than a living for himself there should be no damages awarded on account of his death." The Court could not have given that instruction, as asked, for the reason that there was no evidence going to support that view to the extent requested in the instruction. There was, indeed, a witness (George Kinney) who said that "the intestate's farm was a tolerably large old farm, a little run down, what he would call rather a poor farm; that he did not know a great deal about what kind of crops the intestate made, but that he made a plenty to support himself, and that if he made anything more than a support for himself it was *not much more.*" That evidence tended to show that the intestate did not earn as much as the verdict of the jury declared, but, certainly it did not tend to show that he made *nothing more than* a support for himself. There were other witnesses who testified that his net earnings were from $300 to $400 a year. The tax lists showed, for the year in which the intestate was killed, about $700 worth of personal and real estate. Under some circumstances that might have been evidence against him as to the value of his property at the time it was listed, but it hardly could be considered evidence as to what his ser-

vices were worth or what he had earned in the year before. The instruction which his Honor gave followed the rulings of this Court upon the subject. Upon the whole evidence his Honor on this point instructed the jury as follows:

"The measure of damages is the present value of the net pecuniary worth of the deceased to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy. As a basis on which to enable the jury to make their estimate, it is competent to show, and for them to consider the age of the deceased, his prospects in life, his habits, his character, his industry and skill, the means he had for making money, the business in which he was employed—the end of it all being to enable the jury to fix upon the net income which might be reasonably expected if death had not ensued, and thus arrive at the pecuniary worth of the deceased to his family. You do not undertake to give the equivalent of human life. You allow nothing for suffering. You do not attempt to punish the railroad, but you seek to give a fair, reasonable pecuniary worth of the deceased to his family, under the rule which I have laid down. You should rid yourself of all prejudice, if you have any, and of sympathy. It is not a question of sympathy; it is just a plain practical question, and you should give a reasonable and fair verdict upon all the issues."

The defendant requested the Court to charge that "If the jury believed the evidence the crossing itself up to and including the boxes on each side, was in good condition, and that there is no evidence that any defect in the road within the limit of the two boxes was out of repair or caused the injury." Upon a superficial view it might appear that the matter to which the instruc-

tion pertained was material to the case, but, in reality, it is not so.

The wagon, in which the intestate was seated, was struck by the pilot of the engine between the first and rear wheels. The contention of the plaintiff was that the defendant's engineer was negligent in not keeping a proper lookout, that the train was not properly equipped with employees and with brakes and other necessary appliances to check its speed after the intestate had been discovered on the track, and that the defendant's engineer failed to sound the whistle at the signal post. The contention of the defendant was that the plaintiff's intestate had crossed the track in the clear, but that his horse having become frightened backed the wagon on the track so suddenly that the engineer did not have time to check the speed of the engine and thereby to prevent the injury. The condition of the road-bed, therefore, had no connection with the collision from the standpoint of either the plaintiff or the defendant. The defendant's position was that, regardless of the condition of the road-bed, whether it was good or bad, the engineer could not have prevented the injury for want of time owing to the sudden backing of the horse. The judgment is affirmed.

Affirmed.