## PUETT v. RAILROAD.

(Filed May 8, 1906).

*Railroads —Passengers —Argument of Counsel —Evidence.*

1. The right of a passenger to recover against a carrier for its neglect to carry him to his destination, rests not only upon contract, but the duty so to carry him is imposed by law and for a breach of it he may recover in tort.

2. The trial judge has a large discretion in controlling and directing the argument of counsel, but this does not include the right to deprive a litigant of the benefit of his counsel's argument when it is confined within proper bounds and is addressed to the material facts of the case.

3. In an action for injuries to a passenger owing to the drunken conduct of the engineer, the testimony of a witness that "when he started to get on the train at the station the conductor told him not to get on, as it was dangerous to do so. Some negroes were in the car," was competent as some evidence tending to show that the conductor knew of the drunken condition of the engineer and fireman before he left and the court erred in excluding the statement that "it was dangerous."

ACTION by Walter Puett and wife against Caldwell and Northern Railroad Co., heard by *Judge Oliver H. Allen* and a jury, at the November Term, 1905, of the Superior Court of CALDWELL.

Plaintiffs brought this action to recover damages for injuries caused by the negligence of the defendants. They had purchased tickets and boarded the train at Lenoir, intending to go to Collettsville, ten miles distant. The nature of the injury can be best described by stating the testimony of the *feme* plaintiff, Mrs. Martha Puett, which was as follows: "On the night of 27th of February, 1905, my husband, W. R. Puett, and myself boarded the train at Lenoir to go to Collettsville and paid our fare. It was a dark, foggy and rainy night. The train had gone about three miles from Lenoir

when it stopped. While the train was standing on the track, it was jerked backward and forward in a violent manner several times. After the train had been stopped some minutes, the engineer came back into the car where the passengers were with a light in one hand and a pistol, which he flourished, in the other. He was cursing and swearing because some one had stopped the train. He seemed drunk and mad. I got off the train because I was afraid. I was afraid of being killed. He said nothing to me, but only came through the car, where the passengers were, cursing. He did not say anything that frightened me. My husband was there, and I had my baby with me. My husband, myself and baby, after getting off the train, walked about one-half mile to the house of Mr. Martin, and next morning walked to Collettsville, about seven miles away. It shocked me and gave me a headache, and I was sick about three months, and during that time was taking medicine. The engineer did not say anything to me." There was evidence tending to show that the conduct of the engineer was so violent and threatening that the conductor set the brakes and placed the train in charge of a man by the name of Pope, who was an officer of the defendants. He then went to Lenoir to get another engineer and fireman. While he was gone, the engineer, in a drunken condition, entered the car and inqured for the man who had locked the train, and threatened to kill him. The engineer had jerked the train back and forth with the engine several times and alarmed the *feme* plaintiff. He then cut loose the engine and started up the mountain. Pope then said, "If he goes up he will do harm. I have done everything that I can do." When he left with the engine he threatened "to go to the top of the mountain and then come back and run through the train." Pope (the officer in charge of the train after the conductor left) went into the car, where the plaintiffs were seated, and told the passengers "that they had better watch out." He then repeated to them what the engineer had

threatened to do, and most of the passengers left the train. The defendants introduced no evidence.

There were exceptions to evidence and to the charge of the court and also to the refusal to give instructions, but they need not be set out in the view taken of the case by this court.

It is stated in the case that during the argument of the plaintiff's counsel, he commented on the declaration of Pope to the passengers, when he was stopped by the court. This is one of the errors assigned.

Post Clarke testified: "When I started to get on the train at Lenoir, the conductor told me not to get on it as it was dangerous to do so. Some negroes were in the car." The defendant objected to the statement of the conductor "that it was dangerous" and it was excluded. Plaintiff excepted.

There was a verdict for the defendants. Judgment was rendered thereon and the plaintiffs appealed.

*Lawrence Wakefield* and *Edmund Jones* for the plaintiffs.
*J. H. Marion* and *W. C. Newland* for the defendant.

WALKER, J., after stating the case: The right of the plaintiffs to recover was not seriously questioned, provided the jury had found the facts to be as alleged in the complaint. The court charged the jury upon the theory that there might be such a recovery if they found the facts to be as the witnesses testified they were. The right of a passenger to recover against a carrier for its neglect to carry him to his destination, rests not only upon contract, but the duty so to carry him is imposed by law and for a breach of it he may recover in tort and the liability then is, of course, independent of the contract. Fetter on Carriers, p. 11, sec. 5, and notes, and p. 1337, sec. 535; *Hansley v. Railroad,* 115 N. C., 602; Code, sec. 1963; Revisal, sec. 2611. We are not now referring to the measure of damages, for that question is not before us. In the *Hansley case,* the rule as to compensatory damages in

such cases seems to have been agreed upon by all the judges, though there was a division of opinion among them as to exemplary damages. We will not even intimate whether the plaintiff is entitled to recover punitive damages in this case, if he is entitled to recover at all, but leave that question open for decision when it is presented.

We think that His Honor erred in interrupting and stopping counsel in his argument. The comment he was making upon the declaration of Pope seems to us to have been clearly within his right. What Pope said, at the time the plaintiffs were in the passenger coach, was a part of the *res gestae.* It occurred at the very time that the plaintiffs left the car, and tended to explain why they left and to show that they had good cause for leaving, in that they had a reasonable apprehension of danger if they remained. It also tended to corroborate the plaintiffs as witnesses. It was not merely a statement of Pope as to what had occurred, which would be hearsay, but a declaration made at the time the drunken engineer left with his engine, he having made the threat to return and "run through the train." It was an integral part of the whole transaction, as much so as the conduct of the engineer and the act of the plaintiffs, and was required to complete the story of what had been done. Being thus competent, material and relevant, there can be no doubt of the right of counsel to make proper comment upon it in his address to the jury. This was all that he was doing when admonished by the judge to stop, which he did, as he should have done, in submission to the intimation of the court. But his client was thereby prejudiced, and prevented, through his chosen counsel, from developing his case before the jury. The judge has a large discretion in controlling and directing the argument of counsel *(State v. Caveness,* 78 N. C., 484), but this does not include the right to deprive a litigant of the benefit of his counsel's argument when it is confined within proper bounds and is addressed to the material facts of the case.

*State v. Miller,* 75 N. C., 73. What is here said is subject, however, to the restrictions imposed by the Act of 1903, ch. 433; Revisal, sec. 216. The right to argue the whole case has been expressly conferred by statute. Rev. Code, ch. 31; sec. 57, par. 15; Code, ch. 4, sec. 30; Revisal, sec. 216. The history of this legislation is well known to the bench and bar. *State v. Miller, supra.* The reason of the court for stopping counsel is not given. We assume, and we think not unreasonably, that the learned judge who presided at the trial thought the comment improper, as the declaration of Pope was immaterial. Entertaining this opinion, it was proper to interfere as he did. But we think the declaration was material and a proper subject of comment.

We do not see why the testimony of the witness, Post Clarke, which was excluded by the court, was not competent and relevant. It was ruled out, we are informed, because it was supposed to be too uncertain as to the source of danger. The witness stated, it is true, in the same connection, that there were negroes on the train, but it does. not appear that he intended to imply that the conductor referred to them as dangerous. He was merely stating the fact of their presence without regard to its relation with what the conductor had said. Nor does it appear that the negroes were intoxicated or misbehaving themselves. The evidence fails to disclose anything to which the conductor could have referred, except the drunken condition of the engineer and fireman. He may not have intended to refer to that, but in the absence of proof of any other source of danger, what he said is competent as some evidence to be considered by the jury, tending to show that he knew of their condition before he left Lenoir. What he really did mean may be explained at the next trial.

In unduly restraining the argument of counsel and in excluding competent evidence as herein stated, there was error in law.

New Trial.