CLARK, C. J., concurs in result.
This is an action under the Federal Employer's Liability Act, to recover damages for the alleged wrongful death of plaintiff's intestate and son, Leonard C. Ervin, caused by being caught between an engine and a freight caboose in the course of a switching movement by using a push pole on the yards at Rural Hall, North Carolina.
The engineer, W. D. Thomas, was made a party defendant, and filed an answer, the jury answering the issue directed at his conduct and the allegations of negligence in respect thereto in his favor.
The deceased was a member of the crew, acting in the capacity of flagman, and was 23 years old when he was killed. The train, which was a freight train, had just come in from Mount Airy. While the conductor was up at the station, getting the bills from the station agent, preparatory to checking the cars that were to be put into his train, the engineer and the fireman, who were on the engine, together with Irvin, O'Neal, and Wall, were endeavoring to get the caboose at a point on the yard where it could be placed at the rear of the train. To do this, it was necessary to get it over and across a switch or "cross-over," where (8) the Wilkesboro main line and the Mount Airy main line converge. The first effort made in this direction was to push the caboose on a knoll and release the brakes, expecting gravity (it being down grade) to take it across the switch. This failed, however, the caboose getting only partially across the switch, thus blocking it, and preventing the engine from getting to a necessary portion of the yard. It was necessary to get the caboose out of the way, and from across the switch. It was while endeavoring to do this that Irvin was killed.
The switch on which the caboose stood was a cross-over switch, the caboose having come down from the knoll on one track while the engine *Page 7 
stood on another, these tracks crossing at the switch. The method employed was to get a pole, carried on the side of the tender for that purpose, which was 9 feet 4 inches long and some 6 inches in diameter, weighing about 74 pounds, and put one end against the end sill of the caboose where it was held by Irvin, and let the engine come up and strike the other end, which was held by Wall, thus giving the caboose sufficient momentum to clear the switch by shoving it forward on the track it came in on from the knoll, while the engine (the switch being thrown by O'Neal) would proceed across the switch along the same track it stood on.
The pole, which was called a push pole, would be at a slight angle. At the time the push pole was taken down by Irvin, the conductor was still in the neighborhood of the station, but the evidence of the plaintiff tended to prove that he was present when the intestate was killed and gave the signal to the engineer to move forward. No evidence was introduced that the intestate had ever contributed to the support of his mother.
After setting forth in paragraph 5 that the conductor "was personally present, standing within a few feet of plaintiff's intestate at the time he was injured, and directed plaintiff's intestate in the discharge of his duties at said time, and gave the signal to the engineer to come forward with the engine," the complaint proceeds to charge negligence as follows: That the deceased was negligently ordered to hold the push pole "against the end of the caboose car, which was standing near the intersection of the main track and a side-track, while another employee was holding the other end of the pole, so that the engine" would in moving up come in contact with the pole, thereby giving the (9) caboose car sufficient momentum to get it off the switch; that the deceased was "negligently required to stand at the crossing under the direction of the conductor, and hold his end of the pole against the caboose"; that there was no socket on the caboose to hold the end of the pole up against the caboose; that the engine was an old engine without sufficient brakes, and otherwise defective, and that the pole was old and not strong enough to do the work; that the engineer was not a prudent and careful engineer, and negligently and at an excessive speed brought the engine in contact with the pole, "causing the pole which plaintiff's intestate was holding against the caboose to bend and slip," thereby catching the plaintiff's intestate between the engine and caboose; that the manner in which the work was being done was negligent and irregular.
As a result of failure of proof by the plaintiff, the jury was instructed not to consider the following allegations: (b) That intestate was ordered *Page 8 
to use the push pole; (c) That the intestate was required by the conductor "to stand at the crossing and hold his end of the pole against the caboose"; (d) That the engine was an old engine, without sufficient brakes and otherwise defective; (e) That the push pole was old and not strong enough.
The following is the whole of his Honor's charge on the allegations of negligence left to the jury:
"This is an action brought by the administratrix of Leonard C. Irvin to recover damages for the death of her intestate, which she alleges was caused by the negligence of the defendants, and the court charges you it is the duty of a railroad company, or its servants and agents, when engaged in operating a train, to be continuously in the exercise of reasonable care to avoid injury to its servants, as well as its passengers, and if there shall be a failure to perform such duty and in consequence thereof one is killed or injured, that shall be negligence, and if the injury should find by the greater weight of the evidence that such negligence was the proximate cause of the injury, that would be actionable negligence.
"Reasonable care is such degree of care as a prudent man (10) should use under like circumstances and charged with a like duty.
"Proximate cause of an injury is one which produces the result in continuous sequence and without which such injury would not have occurred, and from which any man of ordinary prudence could foresee that such result was probable, under facts as they existed. . . . Now, applying these principles of law to the facts in this case, the court instructs the jury that if they shall find by the greater weight of the evidence that the defendant, the railroad company, through its servants or agents who were operating the train by which the plaintiff's intestate was killed, and W. D. Thomas, the engineer, failed to exercise reasonable care — both of them — for the safety of its crew, and in consequence thereof the plaintiff's intestate was killed; and if the jury shall further find by the greater weight of the evidence that such failure was the proximate cause of the injury, then they shall answer that issue `Yes' as to both of them. If they should so find as to only one of the defendants, they should answer `Yes' as to one, and name the one. If they should not so find as to either one of the defendants, they should answer that issue `No' — `Nothing.'
"If any of that negligence or any negligence which resulted in the death of the intestate was caused by the negligence of any one of the crew who was on that train, and it was the proximate cause — as I have explained proximate cause of an injury — and the negligence was due to a want of exercise of reasonable care, then the railroad company is *Page 9 
responsible, because they have to operate their train by agents, and if the death of the plaintiff was due to a want of exercise of reasonable care on the part of any one who was representing the railroad company there in the operation of its train, it would be imputed to the railroad company.
"So far as Thomas is concerned, the court charges you that notwithstanding Thomas was the engineer, and the conductor was there about the train, or whether he was there or not, or whether he was directed by the conductor to move it or not — doesn't make any difference why he did it — if when he was proceeding with that engine he (11) saw, or by the exercise of reasonable care could have seen, and it was a fact that he could not pass along there and move that car that they wanted to move — that is, the caboose — without imperiling the safety of the men who were holding the end of the pole, and if that was the proximate cause of the injury, that is, his moving down there, whether it was at greater speed or not — if he saw he could not accomplish it without great danger to the plaintiff, and that was the cause of the injury, then it was the proximate cause, and you will say `Yes' as to him."
The defendant requested his Honor to charge the jury: "If the jury find from the evidence that the defendant W. D. Thomas is not guilty of negligence, then in so far as the plaintiff seeks to charge the railway company by reason of his conduct and acts with respect to the movement and handling of the engine, I charge you that such conduct and acts will not support an answer to the first issue, and you will not consider that phase of the case against the railway company."
This was refused, and the defendant excepted.
During the argument of the counsel for the Southern Railway Company, the last one who addressed the jury in its behalf said to the jury in substance that had Mrs. Irvin gone on the stand she could have testified whether her son, during his life, contributed to her support or not, and how much. Whereupon the court stopped counsel, stating that if Mrs. Irvin had gone on the stand as a witness she could not have testified to such a fact, and directed the jury not to consider such an argument. Whereupon, and at the time, the counsel of the Southern Railway Company objected to the ruling of the court, and upon the objection being overruled, excepted.
The defendant requested his Honor to charge upon the issue of damages: "Upon the question of the pecuniary value of the life of the deceased to his mother, I charge you that there is no evidence that he gave any part of his earnings to his mother." Refused, and defendant excepted. *Page 10 
His Honor charged the jury on the issue of damages as follows: "As this action is brought under the act of Congress known as the (12) `Federal Employer's Liability Act,' its provisions govern the rights and liabilities of the plaintiff and the defendant, the Southern Railway Company, and all rules of law must be determined by and in accordance with its provisions, for it is absolutely exclusive as to the subject-matter of its provisions. The State law cannot govern in any aspect of the case.
"By virtue of the provisions of the Federal Employer's Liability Act, the fact that an employee may have been guilty of contributory negligence cannot, as it does under the State law, bar a recovery; but the damages, if the jury find that the plaintiff is entitled to damages, shall be diminished in proportion to the amount of negligence attributable to such employee.
"The measure of damages in this case is not the measure of damages obtaining under the State practice, to wit, the pecuniary value of the life of the intestate during its prospective continuance, but is the measure of damages as fixed by the Federal Employer's Liability Act, and is brought for the benefit of some certain person, to wit, in this case, the mother; so that the measure of damages in this case is the loss in money caused the mother by reason of the death of her son. It is purely and entirely a money or financial loss. How much money has the mother been deprived of by the death of her son, computing the same at its present worth or value? It is not a question of how much the son could have made for his own use had he lived out his allotted time, but the present value of the sum his mother might reasonably have expected to receive from his earnings during her life, for the limit of time within which she could expect to receive financial aid from her son is the time which she could reasonably be expected to live.
"You must not undertake to give the equivalent or the value of human life. You will allow nothing for the suffering or sorrow of either the deceased or his mother. You must not attempt to punish the railway company, but endeavor to give a fair and reasonable pecuniary value for the continuation of the life of the deceased to his mother.
"Therefore, you will consider what sum of money, paid at the present time, in a lump sum, would represent the fair value of what the mother had a reasonable right to expect, under all the circumstances, (13) to receive from the earnings of her son, had he lived until her death.
"As a basis on which to enable you to make your estimate, it is proper for you to consider the wages the son was receiving, the age and health of the son, the fact that the son might have married and thereby made *Page 11 
it necessary to use all or a part of his earnings in the support of his own family; you will consider the habits, prospect in life, industry and skill of the son, the business in which he was engaged, and its hazards as to life; you will consider how much of his earnings he spent on himself or otherwise, either for necessities or for other purposes, as distinguished from what he spent on or gave to his mother, if you find from the evidence that he contributed anything from his earnings to his mother; because the part of his wages that he spent on himself or for other purposes than that contributed to his mother, or what in the future she might reasonably expect he could contribute, would be entirely eliminated from your calculations.
"There is another limitation upon the amount that you will allow as damages, and that is this: You will allow only the present value of what you may find the mother has lost in money because of the death of her son; for she is getting now in a lump sum that which she would have received from time to time during a future period. By this you are not to understand that you are to ascertain the number of years that the contributions to the mother from her son would probably continue, and then multiply such number of years by the amount of such probable yearly contribution, but you are to give a sum of money that will represent the present value of such contributions.
"The evidence you have heard as to the probable duration of the life of the mother, based upon the mortality tables of the insurance companies, is not conclusive upon the question of the duration of her life. Such tables are submitted to you, not to control you, but merely to guide you. They are based upon averages, and there is no certainty that any person will live the average duration of life.
"Now, if you answer the first issue `Yes,' to wit, that the Southern Railway is chargeable with negligence, you should first consider the question of damages, without relation to the question of (14) contributory negligence. If you find that the plaintiff's intestate was guilty of contributory negligence, it would then be your duty to reduce the amount of damages in proportion thereto, since the act provides that damages shall be diminished in proportion to the amount of negligence attributable to the injured employee.
"I instruct you that this provision means this: If you find that the negligence of the two is equal, that is, that the railway company was guilty of negligence and the plaintiff's intestate was guilty of equal negligence that contributed to the injury, you will reduce the damages one-half. If you find that the plaintiff's intestate was guilty of more negligence than the railroad company, then the damages should be reduced more than one-half. If he was guilty of less negligence than the *Page 12 
railway company, then the damages should not be reduced as much as one half."
The following verdict was returned by the jury:
1. Was the plaintiff's intestate killed by the negligence of the defendant, the Southern Railway Company, and of William D. Thomas, or either of them, and if only one, which one, as alleged in the complaint? Answer: Yes; Southern Railway.
2. Did the plaintiff's intestate, by his own negligence, contribute to his injury, as alleged in the answers of the defendants, the Southern Railway Company and William D. Thomas? Answer: No.
3. What damage, if any, is the plaintiff entitled to recover? Answer: $8,000.
Judgment was entered upon the verdict for $6,000, the plaintiff having consented to the reduction, and the defendant appealed.
We will first consider the exception to the refusal of his Honor to permit counsel for the defendant to argue that the failure of the son to support the mother should be considered by the jury, (15) and that if he had contributed to her support it would have been proven by the mother.
If the failure of the son to contribute to the support of the mother is a relevant circumstance, and the mother is a competent witness to prove the fact, there is error in the ruling.
1. Is the mother a competent witness to prove the fact of support?
The only objection urged against her competency is under section 1631 of the Revisal.
An accurate and comprehensive analysis of this section will be found inBunn v. Todd, 107 N.C. 266, where the present Chief Justice says:
"It disqualifies
 WHOM — 1. Parties to the action. 2. Persons interested in the event of the action. 3. Persons through or under whom the persons in the first two classes derive their title or interest.
A witness, although belonging to one of these classes, is incompetent only in the following cases:
 WHEN — To testify in behalf of himself, or the person succeeding to this title or interest against the representative of a deceased person, or committee of a lunatic, or any one deriving his title or interest through them. *Page 13 
And the disqualification of such person, and in even such cases, is restricted to the following —
 SUBJECT-MATTER — As to a personal transaction or communication between the witness and the person since deceased or lunatic.
And even to those persons and in those cases there are the following —
 EXCEPTIONS — When the representative of, or person claiming through or under, the deceased person or lunatic is examined in his own behalf, or the testimony of the deceased person or lunatic is given in evidence concerning the same transaction. Burnett v. Savage, 92 N.C. 10; Summer v. Candler, 92 N.C. 634.
Tested by this construction of the statute, the mother is a competent witness, because, while interested in the event of the action, she would not be testifying against the representative of a deceased (16) person, etc.
2. Is the failure of the son to contribute to the support of the mother a relevant circumstance?
We held in Dooley v. R. R., 163 N.C. 454, that an action may be maintained under the Federal statute in behalf of a parent when there is a reasonable expectation of pecuniary benefit from the continuance of the life of the child, although the child has not contributed to the support of the parent, and the authorities which support this principle also hold that evidence of contributions by the child to the support of the parent is material and important in determining whether such reasonable expectation exists, and in the assessment of damages which may be recovered, and if such evidence is material and competent for the parent, the defendant may prove the contrary.
The mother is not only a competent witness, but in all probability the only witness, who would know all the facts, and it is held in Hudson v.Jordan, 108 N.C. 12, "that the introduction or nonintroduction of a party as a witness in his own behalf is the subject of comment exactly as the introduction or nonintroduction of any other witness would be."
The conduct of counsel in presenting their causes to juries is left largely to the discretion of the trial judge, and that this discretion has been exercised liberally is shown by the following excerpt from 38 Cyc., 1471, where the author says: "Counsel may bring to his use in the discussion of the case well established historical facts, and may allude to such principles of divine law relating to transactions of men as may be appropriate to the case. He may argue matters of which judicial notice is bound to be taken, and state matters which the law presumes, and he may indulge in impassioned bursts of oratory, or what he may consider oratory, so long as he introduces no facts not disclosed by the *Page 14 
evidence. It is not impassioned oratory which the law condemns and discredits in the advocate, but the introduction of facts not disclosed by the evidence. It has been held that he may even shed tears during the argument, the only limitation on this right being that they must (17) not be indulged in to such excess as to impede or delay the business of the court."
It does not seem that counsel in this case exercised all his privileges; but however this may be, the discretion vested in the judge does not "include the right to deprive a litigant of the benefit of his counsel's argument, when it is confined within proper bounds and is addressed to the material facts of the case." Puett v. R. R., 141 N.C. 335.
We are, therefore, of opinion that the ruling of his Honor was erroneous, and that it constitutes reversible error, because the defendant was not only deprived of the argument of its counsel on a material matter, but the error was accentuated when his Honor refused to charge the jury, at the request of the defendant, that there was no evidence that the son gave any part of his earnings to his mother, and assumed in his charge there was such evidence, when there was none, by saying, "You will consider how much of his earnings he spent on himself or otherwise, either for necessities, or for other purposes, as distinguished from what he spent on or even gave to his mother, if you find from the evidence that he contributed anything from his earnings to his mother."
The defendant was also entitled to have the jury instructed, as requested, that if they found from the evidence that the defendant engineer was not negligent, his acts and conduct would not support an answer to the first issue in favor of the plaintiff, and should not be considered in determining the liability of the railroad company.
We at first thought this might be treated as harmless, in view of the fact that the jury found that the engineer was not negligent and could not, therefore, be presumed to base their findings of negligence against the defendant company upon his acts and conduct; but it not only appears that the prayer was refused, but also that his Honor charged the jury: "If any of that negligence, or any negligence which resulted in the death of the intestate, was caused by the negligence of any one of the crew who was on that train, and it was the proximate cause — as I have explained proximate cause of an injury — and the negligence (18) was due to a want of exercise of reasonable care, then the railroad company is responsible, because they have to operate their trains by agents, and if the death of the plaintiff was due to a want of exercise of reasonable care on the part of any one who was representing the railroad company there in the operation of its train, it would be imputed to the railroad company." *Page 15 
The charge given is, of course, predicated upon a finding of negligence, but it fails to direct the minds of the jurors to the facts in controversy or to exclude the conduct of the engineer if he was not negligent.
The principal benefit to be derived from a charge to the jury is not the statement of propositions of law, but the elimination of irrelevant matters and causes of action or allegations as to which no evidence has been offered, and thereby let the jury understand and appreciate the precise facts that are material and determinative.
As said by Merrimon, C. J., in S. v. Wilson, 104 N.C. 873: "The jury should see the issues, stripped of all redundant and confusing matters, and in as clear a light as practicable."
The prayer for instruction is a correct statement of the law upon an aspect of the case presented by the evidence, and as said by Justice Walker
in Baker v. R. R., 144 N.C. 42: "We have held repeatedly that if there is a general charge upon the law of the case, it cannot be assigned here as error that the court did not instruct the jury as to some particular phase of the case, unless it was specially requested so to do. Simmons v.Davenport, 140 N.C. 407. It would seem to follow from this rule, and to be inconsistent with it if we should not so hold, that if a special instruction is asked as to a particular aspect of the case presented by the evidence, it should be given by the court with substantial conformity to the prayer."
There must, therefore, be a new trial as between the plaintiff and the railroad company.
We have not discussed the refusal to submit an issue as to assumption of risk, because we expressed our views on this question in Horton v.R. R., 162 N.C. 424, and it is not necessary to repeat them; but we would suggest that the issue be submitted at the next (19) trial and that the jury be instructed to answer it "No," if they find by the greater weight of the evidence that the plaintiff was injured by the negligent conduct of the conductor in signaling the engine forward.
We have set out the charge of his Honor on the issue of damages in full, because it involves a new question and is clear, accurate, and comprehensive, as applied to the facts of this case, but would, of course, have to be modified to fit other facts.
New trial.
CLARK, C. J., concurs in result.
Cited: Kenney v. R. R., 165 N.C. 103; Marcom v. R. R., ib., 260;Saunders v. R. R., 167 N.C. 383; Raines v. R. R., 169 N.C. 195. *Page 16