J. W. INGLE, ADMINISTRATOR, v. SOUTHERN RAILWAY COMPANY ET AL.

(Filed 16 December, 1914.)

1. Appeal and Error — Brief—Argument—Exceptions Abandoned—Rules of Court.

Mere reference to exceptions of record made in the brief, without argument or citation of authority, is not a compliance with Rule 34, Supreme Court, which requires that authority or reason be given to support the exceptions, or they will be considered as abandoned.

2. Trials—Instructions—Construed as Whole—Appeal and Error.

The charge of the court in this case is construed as a whole, and being according to Laws 1913, ch. 6, sec. 1, and precedents, no error is found. *Ward v. R. R.,* 161 N. C., 180, cited and applied.

3. Trials—Negligence—Instructions—Appeal and Error—Harmless Error.

The plaintiff's intestate, a brakeman on defendant's train, was caught between the tank of the engine and box car and mashed to death, and it is *Held,* that the court in his general charge upon the question as to whether the intestate went between the cars without the knowledge of defendant and against its orders, etc., instructed more favorably to the defendant than it had specially requested, and no reversible error is found.

4. **Trials—Issues—Answer—Instructions—Appeal and Error—Harmless Error.**

Where in an action to recover damages for a personal injury an issue as to contributory negligence has been found in defendant's favor, the instructions of the court upon this issue become immaterial, so far as the defendant is concerned.

5. **Railroads—Employer and Employee—Contributory Negligence—Measure of Damages—Interpretation of Statutes—Federal Act.**

The verdict of the jury in this action against a railroad company to recover for the wrongful death of its employee, under the instruction of the court, awarded damages by considering the contributory negligence of the plaintiff's intestate and diminishing the amount of recovery according to Laws 1913, ch. 6, secs. 2, 3, and 4; and it appearing that by admissions, pleadings, and the evidence that the intestate was engaged upon an intrastate train, the State statute and not the Federal statute is applicable; and it is *Further held*, that the testimony of a witness that he thought, without accurate means of knowledge, that some of the cars of the train were loaded with coal from Tennessee or Virginia, is not sufficient to constitute legal evidence of interstate commerce.

APPEAL by defendants from *Cline, J.,* at August Term, 1914, of BUNCOMBE.

*Fortune & Roberts for plaintiff.*
*Martin, Rollins & Wright for defendants.*

CLARK, C. J.   This is an action to recover damages for the wrongful death of the plaintiff's intestate, W. J. Ross. As stated in the defendants' brief, the deceased was a brakeman on the defendants' freight train "running from Asheville to Canton."

Exception 1 is immaterial and, besides, must be taken as abandoned under Rule 34, which provides that "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." The appellants' brief refers to this exception, but gives no authority nor reason to support it.

Exceptions 2, 3, 4, 5, 6, 7, and 8 are without merit. Construing the charge fairly and as a whole, it was fair to the defendants and in accordance with our precedents. Laws 1913, ch. 6, sec. 1; *Ward v. R. R.,* 161 N. C., 180; *Mendenhall v. R. R.,* 123 N. C., 275, 278.

Exception 9. The defendants requested the court to charge the jury: "If you find that the plaintiff's intestate, W. J. Ross, voluntarily stepped in between the tank of the rear engine and the first car without the knowledge of the defendants, and was mashed and killed by the backing engine, and that the defendants did not know that the said Ross was between said cars, it would be the duty of the jury to answer the first issue 'No.'"

The judge charged the jury even more strongly for the defendants than this prayer, as follows: "Now, if the young man brought about his own death without any instructions, or in the face of instructions to the contrary, given him by the conductor, then his death would have been brought about by his own negligence, and you should answer the first issue 'No.' The railroad company is not responsible for every injury done to one of its employees, but it is responsible when the injury is occasioned by negligence upon the part of some of its other employees or by some defective machinery or by some negligence. Thus, notwithstanding that he was a brakeman there working for the railroad company, if the facts are that he brought about his own death by his own negligence in going there and in face of instructions from Mr. Holcombe not to go, or without any instructions one way or the other, if that should be the case, where it was reasonably apparent to an ordinarily prudent man, careful of his own safety, that he put himself in a position of danger, that would be his own negligence. And if it was done by his own negligence, then as to the first issue, whether it was done by the defendants, you would answer 'No.' "

Exceptions 10, 11, and 12, that the court did not instruct the jury that in any view they should find the plaintiff's intestate guilty of contributory negligence, need not be considered, for under the instructions given the jury found that the plaintiff's intestate was guilty of contributory negligence.

There was evidence that the conductor gave the back-up signal at a time and place when he could not see or know that Ross, who was known by him to be a green man, was in a place of safety. All the witnesses testified that no back-up signal was given as required by the company's Rule No. 14, and that they failed to give the engine bell signal, as prescribed in Rule 30, as a warning to the deceased that the engines were about to back up. The deceased had a right to rely upon these signals being given before the engines were moved back, and there was negligence in failing to do so. *Smith v. R. R.,* 132 N. C., 819.

The jury found the defendants guilty of negligence and that the plaintiff's intestate was guilty of contributory negligence, and under the instruction of the court diminished the damages in proportion to the negligence attributable to the deceased employee, Laws 1913, ch. 6, sec. 2. Section 3 of that act prohibits the defense of assumption of risk, and section 4 prohibits any contract or device to exempt common carriers from liability for damages incurred under said chapter.

The defendants contend, however, that the measure of damages laid down should have been that applicable under the Federal statute, and not that which is recognized under the construction of our State statute. But there is nothing in this record to indicate that this injury occurred on a train engaged in interstate commerce.

The complaint alleges that the plaintiff's intestate at the time of the injury was employed on one of the defendants' freight trains "running between Asheville, N. C., and Canton, N. C." This is admitted in the answer and is also stated in defendants' brief. The evidence is that the train was doubling between Asheville and Canton that day; that this train left Asheville at 1:30 p. m. and that this injury took place at Coburn, between Asheville and Canton. The defendants' fireman and conductor testified to the same facts.

The defendants put in the report of the conductor, showing that he was conductor of the train which "left Asheville on that day for Canton with thirteen loaded and three empties." And his evidence is that his train had reached Coburn, between those two points, at 4:30 and stopped for water when this injury occurred. The defendants also put in the certificate of the engineer to the same effect.

The sole evidence upon which the defendants now rely as evidence that this train was engaged in interstate commerce is as follows: The fireman of the defendant company testified, on cross-examination: "Some of those cars were loaded with coal, I think; the best I remember, some coal and some wood, and maybe bark; the coal came from Tennessee or Virginia, but I couldn't say, because I didn't see the bills." It will be seen from this that there is no evidence that any part of this shipment was being transported from a point outside of the State. The witness is not even certain that there was coal in any of the cars, but merely says he "thinks" so. He further states that he "cannot say" that the coal came either from Tennessee or Virginia, because he did not see the bills. Even if his surmise that there was coal in some of the cars, and his further surmise that the coal was Tennessee or Virginia coal, were correct, there is absolutely lacking any evidence that such surmised coal was en route from a point in either of those States to a point in this State. The entire evidence in this record, including the reports of the conductor and engineer, which are put in evidence by the defendants, show that this was a train running from one point in this State to another, *i. e.*, from Asheville to Canton, and that it was purely an intrastate train. It is true that the coal in the tender may have been mined in another State, and if there was any coal in the cars, that this also might have been mined in another State. It is also true that the cars themselves, and the engines, may have been built in another State, and that some of the employees may have been born in another State. But none of these things would have made this interstate traffic. The defendants had full knowledge on the subject, but they do not plead that the train was engaged in any wise in interstate commerce, nor did they put on any evidence by the conductor or engineer or by the bills of lading or otherwise to show that any articles in this train were being transshipped from

a point outside of the State to a point inside the State. The mere surmise, on cross-examination of the fireman, that there may have been coal in some of the cars, which he did not assert as a fact, and the further surmise that some of the coal may have been Tennessee or Virginia coal, though he states that he does not know this, is not evidence in any way of this being interstate traffic.

In *R. R. v. Seale,* 229 U. S., 156, the yard clerk was killed while proceeding through the railway yards to meet an incoming interstate freight train to take down the numbers and initials of the cars and to inspect the same. But in that case it was not controverted that it was an interstate freight train. In *R. R. v. Zachary,* 232 U. S., 248, the fireman was killed while employed in interstate commerce by the lessee interstate railroad, though the lessor railroad was intrastate. In *R. R. v. Behrens,* 233 U. S., 473, the fireman employed by an interstate railway carrier killed on a switching engine which was aiding in moving several cars loaded with intrastate freight, between two points in the same city, was held not to be employed in interstate commerce, although upon completion of the task of switching the cars the force was to take several other cars to sundry points as a step or link in both interstate and intrastate transportation.

In *R. R. v. Lindsay,* 233 U. S., 43, it was held that where there was allegation and proof that a switchman was injured in moving interstate commerce the case was governed by the Federal Employers' Liability Act, though the provisions of that act were not expressly referred to in the pleadings. These four cases are to be found in succession in 33 A. and E. Anno. Cas., 1914 C, with full citations in the notes to all the literature applicable to the point. But it is needless to say that in all the cases cited there was at least legal evidence that the person injured was engaged at the time in some way in aiding interstate commerce. There is not one in which, as in this, there was no evidence to that effect, and nothing more than a mere surmise that there was among the freight an article which the witness surmised had its origin in another State, without any indication whatever, even by surmise, that it was then in process of transportation from such other State. If there was coal on this train in a freight car, it was, according to the evidence, like the coal in the tender of the engine, shipped from Asheville, irrespective of its place of origin, for all the evidence is that this was a train running from "Asheville, N. C., to Canton, N. C.," and back—this is alleged in the complaint, admitted in the answer, in proof by oral evidence on both sides, by the reports of engineer and conductor which were put in evidence by the defendants, and is so recited in the defendant's brief.

Upon the whole case we find

No error.