## IN RE: WILL OF WILLIAM FARR

No. 6928SC385

(Filed 25 February 1970)

**1. Wills § 23— caveat proceeding — instructions — legal effect of codicil**

In this caveat proceeding brought by testator's wife challenging on grounds of mental incapacity and undue influence a purported codicil which revoked two articles of testator's will and substituted other provisions therefor, the trial court did not err in refusing to charge the

jury that under G.S. 31-5.8 a subsequent codicil executed by testator revoking the codicil challenged by the caveator did not have the legal effect of reviving the two articles of testator's will which the challenged codicil had revoked, G.S. 31-5.8 not being relevant to the theory of the trial.

**2. Wills § 22—   caveat proceeding — jury argument — mental capacity — legal effect of codicil**

In this caveat proceeding brought by testator's wife challenging on grounds of mental incapacity and undue influence a purported codicil which revoked two articles of testator's will and substituted other provisions therefor, the trial court erred in preventing counsel for the caveator from arguing to the jury that a subsequent codicil executed by testator revoking the challenged codicil but failing to reexecute the articles of the will which had been revoked by the challenged codicil had the effect under G.S. 31-5.8 of leaving testator intestate as to a considerable portion of his property, which shows that testator did not know the legal effect of the subsequent codicil and is some evidence that testator did not have the mental capacity to execute the challenged codicil the previous month.

**3. Wills § 22—   caveat proceeding — mental capacity — admissibility of evidence — events before and after execution of instrument**

When a will is filed for probate and a caveat to the will is filed on the ground that testator lacked sufficient mental capacity to execute the will, the caveator may present to the jury evidence of events which have a bearing on the mental capacity of the testator, both before and after the instrument was executed, as long as it tends to shed light upon the mental capacity of the testator at the time he made the instrument.

'APPEAL by caveator from *Snepp, J.,* 20 January 1969 Session BUNCOMBE Superior Court.

This is a caveat proceeding filed by Alice M. Farr alleging that the paper writing which purports to be a codicil to the Last Will and Testament of William Farr dated 22 February 1966 was executed at a time when he lacked the mental capacity to make a will and that it was executed as a result of undue influence exerted by his son, William Farr, II, and his daughter, Frances Farr Plunkett.

Answer was filed to the caveat by Suzanne Farr Ivey, William Farr, II, Frances Farr Plunkett and Eva Farr Sharp denying the allegations of undue influence and lack of mental capacity and praying that the caveat be dismissed.

The paper writing purporting to be the Last Will and Testament of William Farr was executed on 17 August 1961, and consisted of fourteen separately numbered paragraphs, paragraphs four and thirteen being as follows:

### "ARTICLE FOUR

"I give, devise and bequeath to my wife, Alice M. Farr, provided she survives me, the sum of Ten Thousand ($10,000.00)

Dollars in cash or securities for her immediate needs to be paid over to her as soon after my death as possible, and I direct my Executor to pay off in full any indebtedness which may be outstanding against real estate held by my wife and me by the entireties. I devise and bequeath to my wife, provided she survives me, the rest of my books not hereinabove devised and all of my household furniture, personal effects of every kind in and about my home place or residence not heretofore devised, but said effects shall not include any stocks, bonds, securities, notes, money or bank deposits belonging to me or held in my name. Should my wife predecease me, or should we both die in a common disaster, the devises and bequests that would have gone to her under this article shall go to my daughters Suzanne Farr Ivey and Eva Farr Sharp and Frances Farr Plunkett, to be divided equally between them."

### *"ARTICLE THIRTEEN*

"All the rest, residue and remainder of my property of whatever nature and wherever situated, including future and contingent, as well as vested interests, right of entry and powers of appointment, or property over which I have power to will, hereinafter referred to as my residuary estate, shall be divided and distributed as follows, such distributions to be made as far as practicable in kind:

"(a)   I devise and bequeath two-fifths of my said residuary estate to my wife, Alice M. Farr, and if my wife fails to survive me or we both die in a common disaster, the said two-fifths of my residuary estate that would have gone to my wife shall be divided equally between my children.

"(b)   I give, devise and bequeath one-fifth of my said residuary estate to my son William Farr II.

"(c)   I give, devise and bequeath one-tenth of my said residuary estate to my daughter Eva Farr Sharp.

"(d)   I give, devise and bequeath one-tenth of my said residuary estate to my daughter Elizabeth Farr McNary.

"(e)   I give, devise and bequeath one-tenth of my said residuary estate to my daughter Suzanne Farr Ivey.

"(f)   I give, devise and bequeath one-tenth of my said residuary estate to my daughter Frances Farr Plunkett, or if she predeceases me then to her daughter Sandra."

Testator executed six codicils to this paper writing dated 17 August 1961, 21 November 1963, 28 September 1964, 18 March 1965, 22 February 1966 and 16 March 1966. The codicil executed on 22 February 1966 was as follows:

"I, WILLIAM FARR, of Asheville, Buncombe County, North Carolina, being of sound mind and memory, but considering the uncertainty of my earthly existence, make this Codicil to my Last Will and Testament dated August 17, 1961.

"A.  I revoke in full all the provisions set out in Article Four of my said Will made August 17, 1961, and in lieu thereof do substitute and provide an entirely new Article to be known as Article Four as follows:

#### " 'ARTICLE FOUR'

"I give and bequeath my books, household furniture and personal effects of every kind in and about my home place not hereinbefore devised, (but said effects shall not include any stocks, bonds, securities, notes, money or bank deposits belonging to me or held in my name), to be divided by my son William Farr, Jr., and delivered to the following designated beneficiaries:

"To my wife, Alice M. Farr, provided she survives me, one-third.

"Two-thirds, which I direct shall include all articles of a family or sentimental value and which should therefore go to my daughters are to be divided equally between my four daughters, Suzanne Farr Ivey, Eva Farr Sharp, Frances Farr Plunkett and Mildred Farr Buck.

"B.  I revoke in full the provisions set out in Article Thirteen of my said will of August 17, 1961, and in lieu thereof do substitute and provide an entirely new Article to be known as Article Thirteen as follows:

#### " 'ARTICLE THIRTEEN'

"All the rest, residue and remainder of my property of whatever nature and wherever situated, including future and contingent, as well as vested interests, rights of entry and powers of appointment, or property over which I have power to will, hereinafter referred to as my residuary estate, shall be divided and distributed as follows, such distributions to be made as far as practicable in kind:

"(a)    I devise and bequeath twenty per cent (20%) of my said residuary estate to my wife, Alice M. Farr, and if my wife fails to survive me or we both die in a common disaster, the said twenty percent (20%) of my residuary estate that would have gone to my wife shall be divided equally between my children.

"(b)    I give, devise and bequeath sixteen percent (16%) of my residuary estate to my son William Farr II.

"(c)    I give, devise and bequeath sixteen percent (16%) of my said residuary estate to my daughter Eva Farr Sharp.

"(d)    I give, devise and bequeath sixteen percent (16%) of my said residuary estate to my daughter Elizabeth Farr Mc-Nary.

"(e)    I give, devise and bequeath sixteen percent (16%) of my said residuary estate to my daughter Suzanne Farr Ivey.

"(f)    I give, devise and bequeath sixteen percent (16%) of my said residuary estate to my daughter Frances Farr Plunkett, or if she predeceases me then to her daughter Sandra.

"Except as changed hereinabove by this Codicil, I hereby ratify and confirm all of the provisions of my said will executed by me on August 17th 1961, as altered or amended by all former Codicils thereto heretofore executed by me in all respects."

The codicil executed 16 March 1966 revoked the codicil dated 22 February 1966 but did not re-execute Articles Four and Thirteen of the Will in compliance with G.S. 31-5.8.

The propounders introduced evidence tending to show that the paper writing dated 17 August 1961 and all of the codicils were executed in accordance with the formalities required by law.

The caveator offered evidence tending to show that she and Mr. Farr were married on 27 November 1947 and that she and Mr. Farr had no children and that Mr. Farr's children were all grown at the time of her marriage to Mr. Farr. Mr. Farr was admitted to the hospital in February, 1966, for treatment of a broken hip. While hospitalized he executed the codicil dated 22 February 1966, and after being discharged he executed the codicil dated 16 March 1966. The evidence tended to show that Mr. Farr was 91 years of age, that he had had an operation upon his leg which was slow in healing and that following the operation he had developed shingles. Mr. Farr also suffered from Parkinson's disease. One witness, J. H. Tinsley, testified that just prior to his death, Mr. Farr told him that his son, William, brought an attorney to the hospital while he was confined

for the broken hip and had him make another codicil to his Will and that when he discovered what the paper writing was upon his return home he revoked it and scratched through it. Nannie Dennis, the Farr's maid for twenty years, testified that on the day prior to his death Mr. Farr told her that his son and daughter had come to him while he was in the hospital and had him sign some papers and that he was so sick he didn't know what he was doing.

The propounders offered evidence tending to show that Mr. Farr's condition was substantially the same as it had been for several years prior to this date. The evidence further tended to show that on 22 February 1966 the testator sent the nurse to summon G. E. Bishop, a friend with a place of business nearby, to act as a witness to the execution of the codicil which he did in conformance with the request of Mr. Farr.

Sixteen issues, including issues of mental capacity and undue influence, were submitted to the jury and answered in favor of the propounders. From judgment entered thereon, the caveator appealed to this Court assigning error.

*Bennett, Kelly & Long, by George Ward Hendon, for caveator-appellant.*

*Landon Roberts, for executor, Van Winkle, Buck, Wall, Starnes and Hyde, by O. E. Starnes, Jr., and Williams, Morris and Golding, by William C. Morris, Jr., for propounders.*

HEDRICK, J.

[1] The appellant first assigns as error the court's refusal to instruct the jury as requested in writing as to the provisions of G.S. 31-5.8 as follows:

" 'No will or any part thereof, which shall be in any manner revoked, can be revived otherwise than by a reexecution thereof, or by the execution of another will in which the revoked will or part thereof is incorporated by reference.'

" 'Therefore, the court instructs you that the execution of the last paper writing dated March 16, 1966, did not have the legal effect of reviving paragraphs Four and Thirteen of the paper writing dated August 17, 1961.' "

G.S. 31-5.8 was not relevant to the theory of the trial. Fourteen of the issues submitted to the jury related to the formalities of the execution of the will and the six codicils. The other two issues

related to mental capacity and undue influence. The evidence given in the case related only to the formal execution of the will and to the physical and mental condition of Mr. Farr, and to the influences which might have been exerted upon him to make the codicil dated 22 February 1966. It was not necessary for the jury to be instructed as to the legal effect of the codicil dated 16 March 1966. The court does not commit error when it refuses to give instructions which, though correct in the abstract, are not applicable to the case. *McMillan v. Baxley*, 112 N.C. 578, 16 S.E. 845 (1893); *Mendenhall v. R. R. Co.*, 123 N.C. 275, 31 S.E. 480 (1898).

[2] The appellant contends that all of the evidence offered tended to show that Mr. Farr did not want to die intestate as to any of his property but that the result of the codicil dated 16 March 1966, in conjunction with G.S. 31-5.8, is that he did in fact die intestate as to a considerable portion of his property since he failed to reexecute Articles Four and Thirteen of his will. Counsel argues that Mr. Farr did not know the legal effect of the instrument he executed 16 March 1966, that this was some evidence of a lack of mental capacity to execute the codicil dated 22 February 1966, and that he should be allowed to argue this to the jury.

G.S. 84-14, in part, provides that ". . . the whole case as well of law as of fact may be argued to the jury." Under this statute counsel's right to argue law generally to the jury has been upheld or expressly recognized. In *Puett v. R. R.*, 141 N.C. 332, 53 S.E. 852 (1906), the trial court stopped counsel during his argument to the jury and refused to allow him to comment upon the testimony of a witness. The court, in holding this to be error on the part of the trial judge, stated: "Being thus competent, material, and relevant, there can be no doubt of the right of counsel to make proper comment upon it in his address to the jury. This was all that he was doing when admonished by the judge to stop, which he did, as he should have done, in submission to the intimation of the court. But this client was thereby prejudiced, and prevented, through his chosen counsel, from developing his case before the jury. The judge has a large discretion in controlling and directing the argument of counsel (*S. v. Caveness*, 78 N.C., 484), but this does not include the right to deprive a litigant of the benefit of his counsel's argument when it is confined within proper bounds and is addressed to the material facts of the case. *S. v. Miller*, 75 N.C., 73. What is here said is subject, however, to the restrictions imposed by Laws 1903, ch. 433; Revisal, sec. 216. The right to argue the whole case has been expressly conferred by statute. Rev. Code, ch. 31, sec. 57, par. 15; Code, ch. 4,

sec. 30; Revisal, sec. 216. The history of this legislation is well known to the bench and bar. *S. v. Miller, supra.* The reason of the court for stopping counsel is not given. We assume, and we think not unreasonably, that the learned judge who presided at the trial thought the comment improper, as the declaration of Pope was immaterial. Entertaining this opinion, it was proper to interfere as he did. But we think this declaration was material and a proper subject of comment."

In *Irvin v. R. R.*, 164 N.C. 5, 80 S.E. 78 (1913), the Court states that the ". . . conduct of counsel in presenting their causes to the jury is left largely to the discretion of the trial judge . . ." and that this discretion has been exercised liberally. The Court further states that even though the counsel in this case did not exercise all of his privileges in arguing to the jury, nevertheless the discretion vested in the judge does not give him the right to deprive a client of the benefit of his attorney's argument when it is within proper bounds and when it is addressed to the material facts of the case. The Court, in *Brown v. Vestal*, 231 N.C. 56, 55 S.E. 2d 797 (1949), while discussing the role of the trial judge in charging the jury, stated: "Counsel have the right to argue 'the whole case as well of law as of fact.' G.S. 84-14; *Howard v. Telegraph Co.*, 170 N.C. 495, 87 S.E. 313. Frequently it is necessary for them to do so in order to present, in an intelligent manner, the facts they contend the jury should find from the evidence offered. *Sears, Roebuck & Co. v. Banking Co.*, 191 N.C. 500, 132 S.E. 468."

**[2, 3]** We hold that it was error for the trial judge to prevent counsel for the appellant from arguing G.S. 31-5.8 to the jury. In North Carolina when a will is filed for probate and a caveat to that will is also filed attempting to prevent probate of the will on the ground that the testator lacked sufficient mental capacity to execute a will, the caveator may present to the jury evidence of events which have a bearing on the mental capacity of the testator, both before and after the instrument is executed as long as it tends to shed light upon the mental capacity of the testator at the time he made the instrument. *In Re Hall's Will*, 252 N.C. 70, 113 S.E. 2d 1 (1960); *In Re Knight's Will*, 250 N.C. 634, 109 S.E. 2d 470 (1959).

We have not discussed the appellant's other assignments of error since they are not likely to occur in a retrial.

For the reasons set forth above, the appellant is entitled to a
New trial.

MALLARD, C.J., and MORRIS, J., concur.